# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 03-2100

GEORGE T. RICHARDSON, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided     May 17, 2006   )

*Kenneth M. Carpenter*, of Topeka, Kansas, was on the brief for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Brian B. Rippel*, Deputy Assistant General Counsel; and *Thomas E. Sullivan*, all of Washington, D.C., were on the brief for the appellee.

Before KASOLD, MOORMAN, and SCHOELEN, *Judges*.

SCHOELEN, *Judge*, filed the opinion of the Court.  KASOLD, *Judge*, and MOORMAN, *Judge*, filed concurring opinions.

SCHOELEN, *Judge*:  The appellant, George T. Richardson, through counsel, appeals a September 5, 2003, Board of Veterans' Appeals (Board) decision denying his requests for revision of August 1944 and May 1946 VA regional office (RO) decisions on the basis of clear and unmistakable error (CUE).  Record (R.) at 1-18.  This appeal is timely, and the Court has jurisdiction over the case pursuant to 38 U.S.C. §§ 7252(a) and 7266.  For the following reasons, we will vacate the Board's determination that there was no CUE in the August 1944 RO decision and remand that matter, and we will affirm the Board's determination that there was no CUE in the May 1946 RO decision.

# I. BACKGROUND

Mr. Richardson served on active duty in the U.S. Army from June to September 1935 and from September 1942 to July 1944. R. at 220, 261. Service medical records indicate treatment for various conditions. For example, he was seen by a doctor in July 1943 for weakness and fainting attacks and was diagnosed with carotid sinus syndrome.[1] R. at 57-59. Additional service medical records indicate a diagnosis of sinusitis and carotid sinus syndrome. R. at 122. In January 1944, after spending five weeks in rehabilitation for his symptoms, Mr. Richardson was diagnosed with mild neurocirculatory asthenia.[2] R. at 96. A May 1944 hospital report notes that he had spent 11 of his 20 months in service in the hospital. R. at 134. The final diagnoses listed on the hospital report are carotid sinus syndrome, simple migraine[3] aggravated by psychological factors, and simple adult maladjustment[4] syndrome with psychosomatic manifestations. R. at 135. That report also notes that Mr. Richardson was seen by a neuropsychiatrist who "concurred in the opinion that we were not dealing with a psychoneurosis[5] in this instance." *Id.* At discharge, he was found to be unfit for further military service because of moderate right carotid sinus syndrome, which had its onset

---

[1]Carotid sinus syndrome is a "stimulation of a hyperactive carotid sinus, causing a marked fall in blood pressure due to vasodilation, cardiac slowing, or both." STEDMAN'S MEDICAL DICTIONARY 1749 (27th ed. 2000) [hereinafter STEDMAN'S]. The carotid sinus is located at the level of the C4 vertebra in the neck. *See id.* at 137.

[2]Neurocirculatory asthenia is "a type of anxiety neurosis formerly encountered often among military personnel during times of war, in which cardiorespiratory symptoms, such as palpitation, rapid pulse, and precordial pain, were prominent." STEDMAN'S 158.

[3]Migraine, also known as a vascular headache, is "[a] symptom complex occurring periodically and characterized by pain in the head (usually unilateral), vertigo, nausea and vomiting, photophobia, and scintillating appearances of light." STEDMAN'S 1118.

[4]Maladjustment is "an inability to cope with the problems and challenges of everyday living." STEDMAN'S 1056.

[5]Psychoneurosis was formerly used to describe "a classification of neurosis that included hysteria, psychasthenia, neurasthenia, and the anxiety and phobic disorders." STEDMAN'S 1477.

in July 1943 and was manifested by "syncope,[6] following pressure on the right side, and a history of dizziness and fainting."  R. at 186.

In August 1944, Mr. Richardson, acting pro se, filed an application for VA benefits (Form 526), in which, in the blank after "Nature of disease or injury on account of which claim is made and the date each began," he described his injuries as follows:

> Claimant had an attack of fever on 7-3-43.  This was followed by 3 attacks of pneumonia.  As a result[,] heart was affected and claimant has had migraine headaches since that time.  Nerves in throat controlling heart have been injured and claimant is unable to have any strenuous physical activity.  Claimant's nervous system has been affected until he is unable to concentrate for any period of time.

R. at 220-21.  In August 1944, the RO granted service connection for right carotid sinus syndrome, rated 30% disabling, and for migraine, rated 20% disabling, for a combined rating of 40%.  R. at 226. A VA medical examination, dated February 1946, listed only a diagnosis of "hypersensitive carotid sinus with carotid sinus syndrome."  R. at 243.  A March 1946 neuropsychiatric examination report noted that Mr. Richardson suffered from an inability to concentrate, dizziness, chills, and fever. R. at 245.  The examiner stated that these symptoms were "secondary in most part to a carotid sinus syndrome," and diagnosed only carotid sinus syndrome.  *Id.*  In response to a request by the RO for a "proper neuropsychiatric diagnosis in this case," the VA examination reports were "reviewed with various examiners and [the] diagnosis of migraine [was] found to be in error."  R. at 248, 252.  In May 1946, the RO reclassified Mr. Richardson's disability as "hypersensitive carotid sinus with carotid sinus syndrome; associated with headaches, formerly diagnosed as migraine," and increased his disability rating for carotid sinus syndrome to 50%.  R. at 254.  His rating for migraine was reduced to 0%.  *Id.*

In April 1959, Mr. Richardson was hospitalized for observation and examination for reevaluation purposes.  R. at 264-65.  In August 1959, the RO again reclassified his service-connected condition to be "psychoneurosis conversion type with headache & vasomotor instability, formerly diagnosed as migraine & hypersensitive carotid sinus," and his rating was reduced from

---

[6]Syncope is a "[l]oss of consciousness and postural tone caused by diminished cerebral blood flow."  STEDMAN'S 1745.

50% to 30%, effective October 3, 1959. R. at 264-66. No reference was made to his 0% rating for migraine. *Id.*

In March 1996, Mr. Richardson, through counsel, filed a request for revision of the August 1944 and August 1959 RO decisions on the basis of CUE. R. at 270-71. He specifically asserted that the RO should have considered whether he had psychoneurosis in its August 1944 decision, based on the 1944 application. R. at 271. In an October 1996 decision, the RO determined that it did not have jurisdiction to consider the CUE issues. R. at 289-90. In a September 2001 decision, the Board reviewed the two requests for revision on the basis of CUE arising from the August 1944 and August 1959 RO decisions and recognized a third allegation of CUE in the May 1946 decision, based on the reduction of Mr. Richardson's rating for migraine. R. at 358-60; 369-70. Pursuant to the holding in *Brown v. West*, the Board concluded that the RO did have original jurisdiction to consider CUE issues and remanded the matter to the RO. 203 F.3d 1378 (Fed. Cir. 2000) (holding that an intervening Board decision that does not decide an issue subject to a request for revision on the basis of CUE does not subsume prior RO decision so as to preclude RO's adjudication of the request for revision on the basis of CUE); R. at 360, 369.

In July 2002, the RO determined that no revision was warranted in the August 1944, May 1946, and August 1959 RO decisions. R. at 384-92. On September 5, 2003, the Board issued the decision now on appeal, which found no CUE in the August 1944 and May 1946 RO decisions. R. at 1-18. The Board also specifically held that Mr. Richardson did not have a pending, unadjudicated claim for psychoneurosis. R. at 11 ("Upon review of the claim, the closest the veteran comes to seeking service connection for psychoneurosis was to report that his 'nervous system has been affected until he is unable to concentrate for any period of time.' That statement does not rise to the level of a claim of entitlement to service connection for psychoneurosis, particularly in view of the May 1944 hospital summary that diagnosed simple adult maladjustment, and his attorney does not contend that it does."). With regard to the August 1959 RO decision, the Board found that the decision was inadequate because it did not list service connection for migraine on the decision, nor did it propose or indicate severance of service connection for migraine. R. at 2. Thus, the Board held that the August 1959 RO decision was not final and was not subject to CUE attack. R. at 3. The Board referred that matter to the RO and it is not presently before the Court. *Id.*

## II. ANALYSIS

A prior final RO decision must be reversed or revised where evidence establishes clear and unmistakable error. *See* 38 U.S.C. § 5109A; 38 C.F.R. § 3.105(a) (2005). CUE is established when the following conditions are met: First, either (1) the correct facts contained in, or constructively contained in, the record were not before the adjudicator, or (2) the statutory or regulatory provisions extant at the time were incorrectly applied. *See Damrel v. Brown*, 6 Vet.App. 242, 245 (1994). Second, the alleged error must be "undebatable," not merely "a disagreement as to how the facts were weighed or evaluated." *Russell v. Principi*, 3 Vet.App. 310, 313-14 (1992) (en banc). Finally, the error must have "manifestly changed the outcome" of the prior decision. *Id.* at 313-14, 320; *see Bustos v. West*, 179 F.3d 1378, 1380-81 (Fed. Cir. 1999) (expressly adopting "manifestly changed the outcome" language in *Russell, supra*). When the Court reviews a determination that there was no CUE in a prior final decision, the Court's review is limited to determining whether the Board's conclusion in that regard is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," and whether it is supported by an adequate "statement of reasons or bases." 38 U.S.C. §§ 7261(a)(3)(A), 7104(d)(1); *see Eddy v. Brown*, 9 Vet.App. 52, 57 (1996).

### A. Clear and Unmistakable Error in the August 1944 Decision

The Board determined that the alleged failure by the RO to adjudicate a claim for psychoneurosis could not be raised in the context of a request for revision on the basis of CUE because only final decisions are subject to revision for CUE. R. at 10-11; *see* 38 C.F.R. § 3.105(a). The Board stated that the failure to recognize the existence of a pending claim is not a final decision subject to collateral attack in a request for revision on the basis of CUE, relying on our holding in *Norris v. West*, 12 Vet.App. 413, 422 (1999) (determining that a claim reasonably raised to the RO was not adjudicated and holding that unadjudicated matters were not final for purposes of CUE attack). R. at 10-11. Thus, the Board held that the 1944 RO's failure to adjudicate a claim for psychoneurosis reasonably raised in 1944 cannot be CUE because there is no final decision on that claim subject to a CUE attack. *Id.* The Board then proceeded to determine, outside of the context of CUE, that Mr. Richardson had not reasonably raised a claim for psychoneurosis in 1944. R. at 11.

The Board stated that the requirement under the holding of the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in *Roberson v. Principi*, 251 F.3d 1378 (Fed. Cir. 2001) for VA to "'fully and sympathetically develop the veteran's claim,' and the consequences of VA's failure to do so, i.e., remand for adjudication of an old 'implicit' claim, has been limited to the facts of that case[,]" citing our decisions in *Lane v. Principi*, 16 Vet.App. 78, 86-87 (2002), and *Simmons v. Principi*, 17 Vet.App. 104, 110 (2003). R. at 10. It found that the duty to fully and sympathetically develop a claim enunciated in *Roberson* only applies when a service-connection claim for a particular disability is accompanied by a contention that the disability causes unemployability. R. at 10. The Board essentially limited *Roberson* to its facts by holding that *Roberson* did not apply in cases in which the alleged prior reasonably raised claim was for service connection rather than for a total disability rating based on individual unemployability (TDIU). R. at 10. Thus, the Board did not follow the holding in *Roberson* that "in order to develop a claim 'to its optimum' as mandated by *Hodge*[ *v. West*, 155 F.3d 1356, 1362-63], the VA must determine all potential claims raised by the evidence, applying all relevant laws and regulations, regardless of whether the claim is specifically labeled a claim for TDIU." *Roberson*, 251 F.3d at 1384; *see* R. at 10.

Subsequent to the Board decision on appeal, the Federal Circuit resolved any confusion as to whether *Roberson* applies only in claims for TDIU. *See Szemraj v. Principi*, 357 F.3d 1370, 1373 (Fed. Cir. 2004) (holding that "VA has a duty to sympathetically read a veteran's allegations in all benefit claims"). The Federal Circuit held that, upon receipt of a request for revision on the basis of CUE, "VA must give a sympathetic reading to the veteran's filings in that earlier proceeding to determine the scope of the claims." *Id.*; *see also Moody v. Principi*, 360 F.3d 1306, 1310 (Fed. Cir. 2004). VA must read all pro se submissions sympathetically, including submissions in claims underlying a request for revision on the basis of CUE, to "'determine all potential claims raised by the evidence, applying all relevant laws and regulations.'" *Beverly v. Nicholson*, 19 Vet.App. 394, 405 (2005) (quoting *Roberson*, 251 F.3d at 1373); *see also Andrews v. Nicholson*, 421 F.3d 1278, 1282 (Fed. Cir. 2005) (stating that "'*Roberson* requires, with respect to all pro se pleadings, that the VA give a sympathetic reading to the veteran's filings'" (quoting *Szemraj*, 357 F.3d at 1373)).

Mr. Richardson argues that, in denying his request for revision of the August 1944 RO decision on the basis of CUE, the Board misinterpreted and misapplied the rule of law articulated

6

in *Roberson*, which has since been further explained in *Szemraj* and *Moody*. Appellant's Brief (Br.) at 6-10. He argues that under *Roberson*, *Szemraj*, and *Moody*, VA has a duty to fully and sympathetically read the pleadings and evidence submitted in support of his prior claim before adjudicating his request for revision on the basis of CUE. *Id.* at 9. He states that it is apparent that the Board did not apply the principles articulated in *Roberson* before denying his request for revision on the basis of CUE. *Id.* at 6-7. He asserts that the matter should be remanded to the Board to apply *Roberson* and read his 1944 submissions sympathetically to include a claim for service connection for psychoneurosis based on his original 1944 application. *Id.* at 9-10.

The Secretary argues that the Board's determination that there was no CUE in the August 1944 RO decision should be affirmed because it was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and was accompanied by an adequate statement of reasons or bases. Secretary's Br. at 9. The Secretary also argues that the pendency of a claim for psychoneurosis is not properly addressed in a request for revision on the basis of CUE. *Id.* at 11-12. In the alternative, the Secretary asserts that, if Mr. Richardson's challenge is properly raised in a request for revision on the basis of CUE, then the Court should find no CUE because Mr. Richardson is merely disagreeing with the Board's factfinding. *Id.* at 13.

We turn first to the Secretary's argument that, under *Norris*, the matter of a pending, unadjudicated claim is not properly addressed in a request for revision on the basis of CUE. *Id.* at 11-12. The Court agrees that revision of a prior decision on the basis of CUE can only be based on a *final* decision by the RO or the Board. *See* 38 C.F.R. § 3.105(a) (providing for the revision of "[p]revious [RO] determinations which are final and binding" on the basis of CUE); 38 C.F.R. § 20.1400(a) (2005) (providing for review to determine whether CUE "exists in a final Board decision"); *see also May v. Nicholson*, 19 Vet.App. 310, 314-19 (2005) (discussing the finality of Board decisions for the purpose of collateral attack); *Norris*, 12 Vet.App. at 422 (holding that where there is no final RO decision, there can be no CUE).

The Federal Circuit held recently in *Andrews*, *supra*, that, where the Board has ruled on a CUE motion in which the appellant alleged a reasonably raised claim and our Court "properly had jurisdiction to review the Board decision," the Federal Circuit had jurisdiction to review our decision. *Id.*, 421 F.3d at 1281. Nothing in the *Andrews* decision, however, demonstrates an intent

7

to alter the rule that revision on the basis of CUE must be based upon a *final* adjudication. In fact, *Andrews* points to the decisions in *Roberson* and *Szemraj*, which stated that "'apart from the requirement that a pro se veteran's pleadings be read sympathetically, our discussion in *Roberson* did not change the well-established legal standard for determining the existence of CUE in RO and [Board] decisions.'" *Andrews*, 421 F.3d at 1283 (quoting *Szemraj*, 357 F.3d at 1373). It is clear that *Andrews* does not alter fundamentally the indispensable prerequisite for revision on the basis of CUE – a final RO or Board decision. *See* 38 C.F.R. § 3.160(d) (2005) (defining a "finally adjudicated claim" as a claim "which has been allowed or disallowed by the agency of original jurisdiction, the action having become final by the expiration of 1 year after the date of notice of an award or disallowance, or by denial on appellate review, whichever is the earlier"); 38 C.F.R. §§ 20.1100, 20.1103, 20.1104 (2005) (providing for the finality of Board decisions and underlying RO decisions); *see also May* and *Norris*, both *supra*.

If any doubt existed as to whether a final decision is a necessary prerequisite to a request for revision on the basis of CUE, the Federal Circuit clarified the matter further in *Bingham v. Nicholson*, 421 F.3d 1346 (Fed. Cir. 2005), where it rejected the appellant's assertion that "a purported failure to evaluate a service connection claim under 'all applicable law' – *e.g.*, the various theories of entitlement authorized by statute – is a legal error that precludes final adjudication of that claim." *Id.* at 1348. The Federal Circuit held that "finality attaches once a claim for benefits is disallowed, not when a particular theory is rejected." *Id.* at 1348-49. Because the *Bingham* Court found a final decision on the claim, if that decision was defective, it could only be corrected through the statutory exceptions to the rule of finality (*e.g.*, a request for revision on the basis of CUE or a claim to reopen based on new and material evidence). Regarding *Andrews*, the *Bingham* Court stated that "VA's failure [in *Andrews*] to consider all aspects of a claim does not render its decision non-final but instead 'is properly challenged through a CUE motion.'" *Bingham*, 421 F.3d at 1349 (quoting *Andrews*, 421 F.3d at 1281).

In *Moody*, *supra*, the Federal Circuit addressed an appeal from this Court's affirmance of a Board denial of a request for revision of a prior RO decision on the basis of CUE in which the appellant sought an earlier effective date for a grant of secondary service connection. The appellant asserted that the RO decision contained CUE because his prior submissions reasonably raised an

informal claim for secondary service connection for a psychiatric disorder that, if recognized, would support an earlier effective date. 360 F.3d at 1309. The *Moody* Court vacated this Court's decision and remanded the matter for the application of the holding in *Roberson*. In interpreting *Roberson*, the *Moody* Court stated:

> The question is whether the [Board], as required by *Roberson*, sympathetically read Mr. Moody's [prior filings], in determining whether Mr. Moody made an informal claim for secondary service connection for his psychiatric disorder. The interpretation of these prior filings is essentially a factual inquiry, and it is beyond our jurisdiction to make that determination.

*Id.* at 1310 (citing *Lennox v. Principi*, 353 F.3d 941, 946 (Fed. Cir. 2003), and *Cook v. Principi*, 353 F.3d 937, 939 (Fed. Cir. 2003) (en banc)).

Thus, a claimant may assert that VA failed to adjudicate a reasonably raised claim in the context of a request for revision of a prior decision on the basis of CUE.[7] *See Bingham*, *Andrews*, *Moody*, and *Roberson*, all *supra*. When presented with such a request, VA must make two threshold factual determinations. First, VA must apply the holding in *Roberson* and give a full and sympathetic reading to the pro se claimant's prior submissions to determine whether such a claim was reasonably raised. If it is determined that a claim was reasonably raised, VA must then determine whether such a claim is pending or whether it was adjudicated as part of a final decision.[8] If such a reasonably raised claim remains pending, then there is no decision on that claim to revise on the basis of CUE; however, the claim must be adjudicated. *See Roberson*, 251 F.3d at 1384-85 (determining that the appellant's earlier submissions raised a TDIU claim as a matter of law and remanding the matter for a determination of entitlement to TDIU). If VA determines that the claim was adjudicated, then the claimant may collaterally attack the resulting decision on the basis of CUE. However, it is not for this Court to decide in the first instance whether such a claim ever existed or, if so, whether such a claim was ever adjudicated. *See Moody*, 360 F.3d at 1310.

---

[7]Whether or not CUE is the exclusive way to raise such a matter is an issue we need not address in order to decide the matter before us.

[8]A claim that has not been finally adjudicated is necessarily pending. *See* 38 C.F.R. § 3.160(c) (2005) (defining "pending claim" as a claim "which has not been finally adjudicated").

9

In this case, although the Board determined that there "is no pending claim for service connection for psychoneurosis" based on Mr. Richardson's statement in his 1944 application in conjunction with the "May 1944 hospital summary that diagnosed simple adult maladjustment," the Board reached this conclusion without first applying *Roberson* and giving a "full and sympathetic reading" to Mr. Richardson's 1944 submissions. R. at 10-11; *see Roberson*, 251 F.3d at 1384 (quoting *Hodge*, 155 F.3d at 1362). After *Szemraj*, there is no question that the Board's holding (based on our then-extant jurisprudence) that *Roberson* applies only in TDIU claims was incorrect. Because the Board failed to apply *Roberson* prior to addressing whether Mr. Richardson reasonably raised a claim for psychoneurosis in 1944, this matter must be remanded to the Board to make the requisite factual findings. *See* 38 U.S.C. § 7104(a); *Gutierrez v. Principi*, 19 Vet.App. 1, 10 (2004) (finding that remand is the appropriate remedy where Board has failed to apply law correctly).

On remand, the Board (or the RO[9]) first should give a full and sympathetic reading of the appellant's 1944 application to determine whether there is a pending, unadjudicated claim for psychoneurosis. If, after applying *Roberson*, it is determined that Mr. Richardson did not reasonably raise a claim for psychoneurosis in his 1944 application, or that such a claim was adjudicated, either as a separate and distinct claim or as part of the August 1944 RO decision, then the Board should adjudicate the request for revision on the basis of CUE. If the Board determines that the 1944 application reasonably raises a claim for psychoneurosis and that such a claim was not adjudicated, then the claim remains pending and must be referred to the RO for a determination of Mr. Richardson's entitlement to service connection for psychoneurosis based on the 1944 application because a claim on which there has been no final decision cannot be addressed in a request for revision on the basis of CUE.[10] *See Norris*, 12 Vet.App. at 422 (noting the pendency of an

---

[9]The Board must determine, in light of *Bernard v. Brown*, whether it can apply *Roberson* in the first instance, or whether it must remand the matter to the RO. *See Bernard*, 4 Vet.App. 389, 394 (1993) (holding that when the Board addresses questions not addressed by the RO, "it must consider whether the claimant has been given adequate notice of the need to submit evidence or argument on that question and an opportunity to submit such evidence and argument and to address that question at a hearing, and, if not, whether the claimant has been prejudiced thereby").

[10]The matter would have to be remanded to the RO (if not already remanded by the Board) for an initial decision on the claim. *See Godfrey v. Brown*, 7 Vet.App. 398, 408 (1995) (holding

unadjudicated TDIU claim before the RO because the RO failed to adjudicate a claim for TDIU as part of an informal claim for an increased rating); *see also Roberson*, 251 F.3d at 1385 (remanding the matter of eligibility for TDIU after determining that a TDIU claim was reasonably raised by the veteran's submissions).

### B. Clear and Unmistakable Error in the May 1946 Decision

Mr. Richardson also argues that there was CUE in the May 1946 RO decision, which reclassified his migraine as hypersensitive carotid sinus with carotid sinus syndrome and increased his disability rating for carotid sinus syndrome to 50%. R. at 254. The RO also reduced his disability rating for migraine to 0%. *Id.* Mr. Richardson argues that this decision unlawfully merged two separate disabilities into one disability rating, and that the RO had no authority to do so. Appellant's Br. at 10-13. The Secretary asserts that the Board did have lawful authority to merge the separate ratings. Secretary's Br. at 16 (citing 1945 Schedule for Rating Disabilities, ¶ 1).

As a preliminary matter, as noted above, a Board decision addressing a request for revision of a prior decision on the basis of CUE in a prior final decision is generally reviewed under the "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" standard. 38 U.S.C. § 7261(a)(3)(A). If the appellant alleges that there was no legal authority for the RO's actions, then the Court is being asked to address a question of law. All questions of law, even those raised in the context of a request for revision on the basis of CUE, are reviewed under the nondeferential de novo standard of review. *See Kent v. Principi*, 389 F.3d 1380, 1384 (Fed. Cir. 2004); *Joyce v. Nicholson*, 19 Vet.App. 36, 43 (2005). Therefore, the determination of whether the RO had the authority to adjust Mr. Richardson's rating in 1946 is reviewed de novo.

The Board found that the RO had the authority to modify Mr. Richardson's ratings based on Paragraphs 1 and 13 of the 1945 Schedule for Rating Disabilities [hereinafter, Paragraph 1 and Paragraph 13], based upon the February 1946 VA examination that attributed his headaches to carotid sinus syndrome and a May 1946 medical opinion that he did not suffer from migraine. R. at 14; *see* R. at 243, 252. Paragraph 1 provides, in pertinent part:

---

"that the Board did not err in referring the matter to the RO because the Board did not have appellate jurisdiction to review the veteran's claim of entitlement to benefits under section 1110 . . . and lacked jurisdiction to adjudicate the merits of that claim").

A veteran's disability claim may require reratings in accordance with changes in laws, changes in medical knowledge, and changes in physical or mental condition, over a period of many years. It is thus essential, both in the examination and in the evaluation of disability, that each disability be viewed in relation to its whole history. Different examiners, at different times, will not describe the same disability in the same language; features of the disability which must have persisted unchanged may be overlooked or a change for the better or worse may not be accurately appreciated or described.

1945 Schedule for Rating Disabilities, ¶ 1; *cf.* 38 C.F.R. §§ 4.1, 4.2 (2005) (codified version of Paragraph 1). Paragraph 13 provides, in pertinent part:

When any change in evaluation is to be made, the rating agency should assure itself that there has been an actual change in the conditions, for better or worse, and not merely a difference in thoroughness of the examination or in use of descriptive terms. *This will not, of course, preclude the correction of erroneous ratings*, nor will it preclude giving the veteran the benefit of reasonable doubt as to increase in severity.

1945 Schedule for Rating Disabilities, ¶ 13 (emphasis added); *cf.* 38 C.F.R. § 4.13 (2005) (codified version of Paragraph 13).

The Board held that Paragraphs 1 and 13 provided authority for the RO decision in May 1946 to reclassify Mr. Richardson's migraine as hypersensitive carotid sinus with carotid sinus syndrome and increase his rating to 50%. R. at 14. Specifically, the Board found that the RO modified Mr. Richardson's disability ratings based on the new medical opinion that his diagnosis of migraine was "found to be in error." R. at 252; *see* R. at 14. In addition, the Board determined that the RO had the legal authority to reclassify his disabilities based on Paragraphs 1 and 13. R. at 14.

Mr. Richardson's assertion that "[t]here was no *change* in the description of [his] carotid sinus syndrome disability or his migraine headaches disability" (Reply Br. at 7) is contrary to the evidence of record (R. at 243, 245, 252), which indicates that there was, in fact, a change in his diagnosis. This assertion illustrates that Mr. Richardson is merely disagreeing with the manner in which the RO weighed the facts in rendering its May 1946 decision. Mere disagreement with the way that the RO evaluated the facts cannot be a basis for a finding of CUE. *See Russell*, 3 Vet.App. at 313-14; *cf.* 38 C.F.R. § 20.1403(d)(1) (2005) (a new medical diagnosis that "corrects" an earlier diagnosis cannot be the basis for a finding of CUE in a Board decision). Even assuming that Mr. Richardson's assertion that his condition did not change is correct (because migraine was never causing his headaches), the RO had lawful authority to modify his rating under Paragraph 13, which

12

allows for "the correction of erroneous ratings." Thus, the Board's conclusion that the RO had lawful authority to adjust Mr. Richardson's disability ratings, based on Paragraphs 1 and 13, is correct.

In addition, Mr. Richardson asserts that the Board violated 38 U.S.C. § 7104(a) by failing to consider all applicable provisions of law. Specifically, he argues that the matter of CUE in the May 1946 decision should be remanded because the Board failed to discuss *Esteban v. Brown*, 6 Vet.App. 259 (1994), and *Fanning v. Brown*, 4 Vet.App. 225 (1993), which he argues are "'potentially applicable'" provisions of law. Appellant's Br. at 14 (citing *Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991)). Our holdings in *Esteban* and *Fanning* both stand for the general proposition that all disabilities must be rated separately. *See* 38 C.F.R. § 4.25(b) (2005) ("Except as otherwise provided in [the rating] schedule, the disabilities arising from a single disease entity . . . are to be rated separately as are all other disabling conditions, if any."). Mr. Richardson is correct that the Board is required by 38 U.S.C. § 7104(a) to consider all applicable provisions of law. *See Schafrath*, 1 Vet.App. at 592-93.

However, his argument fails because the holdings in *Esteban* and *Fanning* were not laws extant at the time of the May 1946 decision. Therefore, it was not necessary for the Board to address the applicability of those cases to Mr. Richardson's request for revision on the basis of CUE. *See Damrel*, 6 Vet.App. at 245-46; *Russell*, 3 Vet.App. at 313-14. Moreover, the RO specifically sought a medical opinion clarifying whether Mr. Richardson's carotid sinus syndrome and migraine were separate diseases (R. at 248), which stated that the diagnosis of migraine was erroneous (R. at 252). Thus, the RO reduced his rating for migraine to 0%, apparently determining that he did not suffer from migraine – a determination that was consistent with the most recent medical opinions at the time. R. at 254; *see* R. at 252.

Mr. Richardson also asserts that the Board's statement of reasons or bases regarding its finding that there was no CUE in the May 1946 RO decision is inadequate. Appellant's Br. at 15-19; *see* 38 U.S.C. § 7104(d)(1). This argument is without merit. He does not allege that the Board failed to address fully any of his arguments regarding CUE in the May 1946 RO decision. Under the guise of reasons or bases, he merely reasserts the same arguments that he makes regarding the merits of his request for revision on the basis of CUE. Moreover, to the extent that he argues that the Board should have addressed any RO decisions based on new medical diagnoses rendered after May 1946,

13

we note that these subsequent decisions are based on evidence not of record in May 1946, and do not establish CUE in the May 1946 RO decision. *See Russell*, 3 Vet.App. at 314 (stating that a new medical diagnosis that "corrects" an earlier error is not CUE); *cf.* 38 C.F.R. § 20.1403(d)(1). Therefore, the Board's finding that there was no CUE in the May 1946 decision will be affirmed.

### III. CONCLUSION

After consideration of Mr. Richardson's and the Secretary's pleadings, and a review of the record, the Board's September 5, 2003, decision that there was no CUE in the August 1944 RO decision is VACATED and that matter is REMANDED for further proceedings consistent with this decision. The Board's decision that there was no CUE in the May 1946 RO decision is AFFIRMED.

KASOLD, *Judge*, concurring: I concur in the Court's holding that Mr. Richardson's assertion that the 1944 RO decision failed to construe his pleadings to raise a claim was properly brought as a request to revise that decision based on CUE and that this matter must be remanded in light of *Andrews* and for application of *Roberson*. I disagree with the majority's discussion as to how the Board or RO should proceed on remand. I believe a finding on remand that the 1944 RO failed to construe Mr. Andrews' pleadings to raise a claim would constitute CUE in that decision, with the manifestly changed outcome being the processing of the claim. *See Andrews v. Nicholson*, 421 F.3d 1278, 1284 (Fed. Cir. 2005) ("[W]hen the VA violates *Roberson* by failing to construe the veteran's pleadings to raise a claim, such claim is not considered unadjudicated but the error is instead properly corrected through a CUE motion[.]"); *see also Bingham v. Nicholson*, 421 F.3d 1346, 1349 (Fed. Cir. 2005) (finding that the 1950 Board's disallowance of claim was a final decision and that the Secretary's "failure to consider all aspects of a claim does not render a decision non-final but instead 'is properly challenged through a CUE motion.'") (citing *Andrews*, *supra*); *Roberson v. Principi*, 251 F.3d 1378, 1384 (Fed. Cir. 2001) (finding in the context of a request for revision on the basis of CUE that a final RO decision failed to construe claimant's pleadings to include a TDIU claim and reversing); *Nelson v. Principi*, 18 Vet.App. 407, 409 (2004) (noting that Federal Circuit in *Norton v. Principi*, 376 F.3d 1336, 1338-39 (2004), rejected arguments that procedural violations in prior final decision could render that decision nonfinal, or that RO decision remained

unadjudicated because the RO failed to sympathetically read his claim, and noting Mr. Nelson had not argued CUE).

Moreover, on remand, because Mr. Richardson's request is one for revision based on CUE, the 1944 RO decision that is being attacked should be reviewed in the context of the law, regulations, and standards generally applied in requests for revision based on CUE and filed under 38 U.S.C. § 5109A. *See*, *e.g.*, *Pierce v. Principi*, 240 F.3d 1348, 1355 (2001) (noting that final RO decisions are entitled to a presumption of validity); *Haines v. West*, 154 F.3d 1298 (Fed. Cir.1998), *cert. denied*, 526 U.S. 1016 (1999) (noting that CUE is the type of error "about which reasonable minds could not differ"); *Eddy v. Brown*, 9 Vet.App. 52, 57 (1996) (finding that CUE must be based on the record and the law that existed at the time of the prior decision).

I also write to contrast *Andrews* with two situations not present here, and to which the CUE analysis in *Andrews* is not applicable. First, the CUE aspect of *Andrews* is inapplicable to cases in which an RO decision or certain subsequent procedural rights were never provided with regard to a claim for VA benefits or the pleadings of a claimant for VA benefits. In such cases, the entire claim for benefits and all aspects of that claim remain open – in an unadjudicated status – and the claim can be pursued in a non-CUE context. *See Tablazon v. Brown*, 8 Vet.App. 359, 361 (1995) (allowing claimant pursuing claim to reopen to assert that his original claim was never final because no Statement of the Case (SOC) had been provided); *Hauck v. Brown*, 6 Vet.App. 518, 519 (1994) (allowing claimant pursuing an increased rating claim to assert that his claim was never final because the Secretary failed to mail him a copy of the Board decision pursuant to 38 U.S.C. § 7104(e)); *Kuo v. Derwinski*, 2 Vet.App. 662, 666 (1992) (allowing claimant pursuing an increased rating claim to assert that he was entitled to an earlier effective date because no SOC had been provided); *Ashley v. Derwinski*, 2 Vet.App. 307, 311 (1992) (finding claim in non-final status when the Secretary failed to mail a claimant a copy of the Board decision pursuant to 38 U.S.C. § 7104(e)(3)); *see also Cook v. Principi*, 318 F.3d 1334, 1340 (2002) (citing favorably *Tablazon*, *Hauck*, *Kuo*, and *Ashley*, all *supra,* and finding a non-final claim occurs when "the time for appealing either an RO or a Board decision did not run where the [Secretary] failed to provide the veteran with information or material critical to the appellate process"); *Woznick v. Nicholson*, 19 Vet.App. 198, 201-02 (2005) (directing the Secretary to issue an SOC as to the appellant's claim).

15

Second, the CUE aspect of *Andrews* is not applicable to a failure of the RO to adjudicate an informal claim for an increased disability rating and associated benefits, including TDIU, that arises from VA medical exams or hospitalization reports. *See* 38 C.F.R. § 3.157(b)(1) (2005); *Norris v. West*, 12 Vet.App. 413, 422 (1999) (determining that an informal claim for a TDIU rating reasonably raised to the RO via VA medical records was not adjudicated and thus the claim was not final for purposes of CUE attack); *see also Roberson* (explicitly distinguishing the holding in *Norris* that an informal claim for TDIU benefits arising from VA medical records had never been adjudicated and therefore had not become final, with the circumstances in *Roberson*, which involved a claim for a TDIU rating presented by the veteran in his original claim for benefits that had not been processed because the pleadings were not sympathetically read).

One notable distinction between the formal claim or pleadings of the claimant and an informal claim based on medical records is that in the former the claimant makes a specific request for benefits, is presumably knowledgeable about what benefits he is seeking and the bases therefor, and is presumably capable of appealing a decision that does not provide all of the benefits sought. *See*, *e.g.*, *Roberson*, 251 F.3d at 1383 (stating that Roberson's original medical disability claim was decided by the RO and was the specific request for benefits for which Roberson sought the highest rating possible). In the latter situation, however, the entire claim and the benefits arising from that claim are generated by medical reports and are initiated pursuant to regulation, without a specific claim being filed by claimant. *See Allin v. Brown*, 10 Vet.App. 55, 58 (1997) (hospital report may constitute an informal claim for increased benefits and assignment of an earlier effective date that corresponds to date of hospital report); *Servello v. Derwinski*, 3 Vet.App. 196, 199 (1992) (stating that § 3.157 (b) does not require the veteran to identify the report as a claim or to identify the benefits sought).

In the instant case, the RO rendered a decision with regard to Mr. Richardson's claim for disability compensation. That decision became final and, pursuant to *Andrews*, Mr. Richardson's claim that the RO erred "by failing to construe [his] pleadings to raise a claim, [ ] is not considered unadjudicated but the error is instead properly corrected through a CUE motion[.]" *Andrews*, *supra*.

16

MOORMAN, *Judge*, concurring: I write separately to further discuss the state of the law following *Andrews v. Nicholson*, 421 F.3d 1278 (Fed. Cir. 2005), and specifically I conclude that filing a motion for revision of a prior final RO or Board decision on the basis of CUE is not the *only* way in which to raise the issue of an unadjudicated pending claim.

I conclude that the Federal Circuit in *Andrews* stated a relatively narrow conclusion that was based on the particular fact pattern and procedural posture of that case. In *Andrews*, VA raised for the first time on appeal, as an argument to defeat the United States Court of Appeals for the Federal Circuit's (Federal Circuit) exercise of jurisdiction, the possibility that a claim for TDIU was still pending and unadjudicated. 421 F.3d at 1281. However, in *Andrews*, the final decision by VA had been rendered after the facts that gave rise to the possibility of a TDIU rating were known and should have been considered by VA in determining that aspect of the original claim, the assignment of the disability rating. *Id.* at 1279-80; *see Collaro v. West*, 136 F.3d 1304, 1308 (Fed. Cir. 1998) (noting the five elements of a claim for service connection); *Fenderson v. West*, 12 Vet.App. 119, 125 (1999). The Court opined that, under these circumstances, "when the VA violates *Roberson*[ *v. Principi*, 251 F.3d 1378 (Fed. Cir. 2001)], by failing to construe the veteran's pleadings to raise a claim, such a claim is not considered unadjudicated but the error is instead properly corrected through a CUE motion[.]" *Andrews*, 421 F.3d at 1284. The presence of an underlying final decision is key to this conclusion.

It is clear that there must be a finding that there is a final decision as to a claim before a revision based on CUE will lie. *See May v. Nicholson*, 19 Vet.App. 310, 314-19 (2005); *Link v. West*, 12 Vet.App. 39, 45 (1998); *Best v. Brown*, 10 Vet.App. 322, 325 (1997). And, if there is such a final decision as to the claim in issue, only a motion for revision on the basis of CUE or a claim to reopen for new and material evidence will lie. *Cook v. Principi*, 318 F.3d 1334, 1339 (Fed. Cir. 2002) (noting the two statutory exceptions to the rule of finality). In discussing TDIU, this presents a troubling problem. For years, VA and this Court's jurisprudence have discussed a "claim for TDIU." The implication is that TDIU is a separate claim. But, the Federal Circuit in *Roberson* and again in *Andrews* clearly found that TDIU, reasonably raised before a final decision on the underlying disability claim, is incorporated as an element of that claim and is finally decided when the underlying disability claim is rated. *See Roberson*, 251 F.3d at 1384 (noting evidence of TDIU

17

submitted at the time the application for VA disability compensation was filed and holding that the subsequent CUE motion addressing the RO's failure to consider TDIU in the final RO decision was appropriate because "Roberson's claim has been finally decided by the RO"); *see also Andrews*, 421 F.3d at 1281. On the other hand, there are circumstances where TDIU clearly can constitute a separate claim. One such circumstance is illustrated in *Norris v. West*, 12 Vet.App. 413 (1999), where this Court found that there were pending, unadjudicated claims for TDIU based on the fact that no final decision had been made concerning the informal claims for an increased rating (implicating TDIU) that were raised years after the initial RO decision on the appellant's claim for service connection. The Federal Circuit, in *Andrews*, *supra*, saw no necessity to discuss *Norris*, *supra*, because, in my view, it perceived no conflict with *Norris*, *supra*. Therefore, I conclude that a final decision concerning a claim remains the indispensable antecedent for a finding of CUE and provides the explanation for the different treatment of TDIU issues in *Andrews* and *Norris*, both *supra*.

The Federal Circuit further reinforced this conclusion in *Bingham v. Nicholson*, 421 F.3d 1346, 1349 (Fed. Cir. 2005), in finding that a VA failure to consider all possible theories, including presumptive theories, for service connection does not preclude a decision on the claim for service connection from being final; rather, such error results in an incomplete, yet final, adjudication of the claim that can be subject to a CUE attack. The Court concluded that, as to the appellant's assertion that failure to consider one theory of service connection constituted a legal error that precluded finality, "the sole vehicle in which to properly pursue that challenge is a CUE claim." 421 F.3d at 1349. The Federal Circuit then also noted the holding in *Andrews* that "VA's failure to consider all aspects of a claim does not render its decision non-final but instead 'is properly challenged through a CUE motion.'" *Id.*

Nothing in these decisions, however, leads me to conclude that every disability listed by a veteran in a single application for VA disability compensation is necessarily encompassed within a final decision by the RO or Board that expressly adjudicates only one of the claimed disabilities. One possible reading of *Andrews* is that a decision as to one of several disability claims simultaneously filed, as part of the same application for benefits, would constitute a final decision as to all. That reading would lead to the conclusion that, following a final decision as to one of the

18

claimed disabilities, the veteran's subsequent request that VA process the other claims that were part of the same application could be asserted only in CUE motions, not as requests to process pending, unadjudicated claims. I do not agree with such a reading. As the Court indicated in *Beverly v. Nicholson*, 19 Vet.App. 394, 404-05 (2005), it "would be illogical and unfair . . . to the appellant to [make him or her] wait until the Board decision is final and then face the high burden of proving CUE when any other error can be addressed immediately and more favorably when raised in a timely manner."