KASOLD, Chief Judge,
concurring:
I fully agree with the Court’s holding today that the evidence before the 1988 RO did not undebatably establish entitlement to TDIU, or referral to the Director, Compensation and Pension Service, for an evaluation of extraschedular TDIU.[6] I *190 write separately, however, to address two issues.[7]
First, as the author of the 2006 order dismissing Mr. Evans’s request for an earlier effective date for TDIU, I wish to highlight the understanding at the time of that order that an assertion that a RO decision failed to construe and adjudicate an implied claim for benefits had to be presented in the context of a request for revision based on CUE. See Andrews v. Nicholson, 421 F.3d 1278, 1284 (Fed.Cir.2005) (“[W]hen the VA violates Roberson [v. Principi, 251 F.3d 1378 (Fed.Cir.2001),] by failing to construe the veteran’s pleadings to raise a claim, such claim is not considered unadjudicated but. the error is instead properly challenged through a CUE motion[.]”); see also Bingham v. Nicholson, 421 F.3d 1346, 1349 (Fed.Cir.2005) (“[A]s we recently held in Andrews ..., the VA’s failure to consider all aspects of a claim does not render its decision non-final but instead is properly challenged through a CUE motion.” (internal quotation marks omitted)). It was almost a year after the order issued that the Court sanctioned the option of raising such' an argument in the context of a direct appeal as to the assigned effective date for benefits. See ante at 185 n. 3; compare Richardson v. Nicholson, 20 Vet.App. 64, 72 n. 7 (2006) (declining to address “[w]hether or not CUE is the exclusive way to raise such a matter”), with Ingram v. Nicholson, 21 Vet.App. 232, 254-55 (2007) (holding that claimants can appeal effective date decisions to obtain review of assertions that a final decision failed to adjudicate an implied claim).
Had Mr. Evans’s CUE motion succeeded in demonstrating that TDIU indeed was raised but overlooked and not adjudicated by the RO in its 1988 decision, today’s opinion correctly notes that the proper action to be taken by the Secretary would have been to adjudicate TDIU for the period that it was pending and assign a new effective date if substantiated. See ante at 185 n. 3; Richardson, 20 Vet.App. at 72 (“If such a reasonably raised claim remains pending, then there is no decision on that claim to revise on the basis of CUE; however, the claim must be adjudicated.”).
Relatedly, because assertions of CUE require specificity, Andre v. Principi, 301 F.3d 1354, 1361 (Fed.Cir.2002) (CUE motion encompasses “only the clear and unmistakable errors specifically alleged therein”); Acciola v. Peake, 22 Vet.App. 320, 328 (2008) (Board need only discuss theories of CUE specifically raised by claimant), had Mr. Evans’s CUE motion been limited to an assertion that his entitlement to TDIU had not been adjudicated, that would have been the only issue properly on appeal. See Jarrell v. Nicholson, 20 Vet.App. 326, 333 (2006) (en banc) (“[E]ach wholly distinct and different CUE theory underlying a request for revision is a separate matter and, when attacking a prior RO decision, each must be presented to and adjudicated by the RO in the first instance and, if not, the Board [and subsequently the Court] lack[ ] jurisdiction over *191 the merits of the matter.”); compare Am drews, 421 F.3d at 1282-83 (holding that assertions of CUE by a pro se claimant are to be sympathetically read, but assertions of CUE by counsel are not).
Otherwise stated, an assertion that an issue was not adjudicated is distinct from an assertion that an issue was wrongly adjudicated; while the former assertion is self-explanatory, the latter requires specificity as to how the claim was wrongly decided, e.g., the correct facts were not before the adjudicator, or the law at the time was misapplied. See King v. Shinseki, 26 Vet.App. 433, 439 (2014) (discussing requirements to show CUE); see also Szemraj v. Principi, 357 F.3d 1370, 1376 (Fed.Cir.2004) (specifically noting, in a CUE case where failure to develop evidence was the issue, that failure to sympathetically read the claim had not been alleged). This is why the former has been sanctioned as capable of being properly raised on direct appeal when the effective date is at issue, see Ingram, supra, while the latter remains exclusively for adjudication pursuant to a request for revision based on CUE, and is not properly before the Court until and unless it has been adjudicated by the agency of original jurisdiction or the Board, as appropriate, see 38 U.S.C. §§ 5109A (authorizing CUE motions against decisions of the agency of original jurisdiction) and 7111 (authorizing CUE motions against Board decisions); Jarrell, supra. Here, as noted in today’s opinion, see ante at 182-84, 184-85, Mr. Evans raised to the RO — and the RO and Board both adjudicated — his assertion of CUE in failing to adjudicate TDIU, as well as his assertion of CUE in failing to award TDIU.
I write secondly to address the legal issue presented and argued to the Court that is addressed in our colleagues’ dissenting statements, but avoided in the Court’s opinion; i.e., whether the RO’s denial of referral of TDIU for extrasche-dular consideration can ever constitute CUE. Because this is an important issue fully argued by the parties — with the Secretary asserting that the RO’s denial of referral of TDIU on an extraschedular basis can never constitute CUE because a referral is not outcome determinative as to benefits — I believe the Court should have addressed it before deciding whether the Board erred in finding that the 1988 RO decision did not contain CUE.
The Court has not erred in its decision not to address this issue, but neither was such decision compelled. See Quirin v. Shinseki, 22 Vet.App. 390, 395 (2009) (citing Taylor v. McKeithen, 407 U.S. 191, 194 n. 4, 92 S.Ct. 1980, 32 L.Ed.2d 648 (1972), for the proposition that “courts of appeal have wide latitude in deciding how to write an opinion”); see also Marbury v. Madison, 5 U.S. 137, 154-73, 180, 1 Cranch 137, 2 L.Ed. 60 (1803) (deciding all significant issues presented in finding that mandamus would be a proper remedy, but holding unconstitutional the law granting the Court original jurisdiction to issue mandamus); Maggitt v. West, 202 F.3d 1370, 1377 (Fed.Cir.2000) (this Court “has jurisdiction to hear arguments presented to it in the first instance, provided it otherwise has jurisdiction over the veteran’s claim”); Michael Abramowicz and Maxwell Stearns, Defining Dicta, 57 Stan. L.Rev. 953, 1040 (2005) (“The holding-dicta distinction should not force judges to resolve cases in the narrowest possible manner that is consistent with the case judgment. When an issue is genuinely before a judge, and thus concerns about constraint are at their minimum, the holding-dicta distinction should leave the choice to the deciding jurist to weigh the benefits and costs of resolving the issue in a complete and comprehensive manner.”). .
*192 At the outset, I cannot agree with the dissenting view that “all that should be needed to establish a manifest change in the outcome of a prior RO decision that failed to refer a case to the Director for consideration of extraschedular TDIU is a showing that, but for the CUE, referral would have occurred, not that there would have been an ultimate award of extraschedular TDIU.” Post at 29. Such a holding would be an emphatic departure from established caselaw requiring a change in the ultimate outcome to establish CUE. See Bustos v. West, 179 F.3d 1378, 1381 (Fed.Cir.1999) (noting “[t]he requirement that CUE must be outcome-determinative,” and stating that 38 C.F.R. § 3.105 does not contemplate findings of CUE “when there is no dispositive impact on the ultimate outcome”); see also Cook v. Principi, 318 F.3d 1334, 1346 (Fed.Cir.2002) (en banc) (re-affirming the “requirement[ ] that a clear and unmistakable error be outcome determinative”); King v. Shinseki, 26 Vet.App. 433, 441 (2014) (stating that “a manifest change in the outcome of the adjudication means that, absent the alleged clear and unmistakable error, the benefit sought would have been granted at the outset”) (emphasis added); Russell v. Principi, 3 Vet.App. 310, 320 (1992) (en banc) (CUE requires showing “manifestly that the correction of the error would have changed the outcome”).
Our dissenting colleagues note that 38 C.F.R. § 3.105 discusses determinations on marriage, age, service, etc., as potential bases for a CUE motion, and cite this regulation as support for their view that a manifestly changed outcome need not result in the grant of an otherwise denied benefit. However, the Federal Circuit already has noted that these examples are cited for the instances in which they are outcome-determinative, e.g., where a marital-status or veteran-status error is the sole basis of the denial of a benefit, such that the reversal of that error will dispositively impact the outcome. See Bustos, 179 F.3d at 1381 (“The requirement that CUE must be outcome-determinative is consistent with the other provisions in § 3.105. This regulation states that prior decisions based on CUE will be ‘reversed or amended5 and contemplates that such reversals and amendments will have a dis-positive impact on the outcomes of the prior decisions.”).
Nevertheless, although for different reasons, I agree with our dissenting colleagues that the RO’s denial of extraschedular TDIU or referral of TDIU for ex-traschedular consideration can constitute CUE. This is because, when we review an assertion that an RO committed CUE in denying extraschedular TDIU or not forwarding that issue to the Director, we must examine whether the Board’s determination — that the record evidence at the time of the RO decision was not clear and unmistakable that the veteran’s service-connected disabilities rendered him unable to secure and follow substantially gainful occupation (i.e., unemployable)— was “arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.” See Joyce v. Nicholson, 19 Vet.App. 36, 42-43 (2005) (Board decisions on requests for revision based on CUE are reviewed under the “arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law” standard). If the Board’s determination was contrary to law — i.e., if the evidence at the time was clear and unmistakable that the veteran’s service-connected disabilities rendered him unemployable — then not only was referral warranted, but the award of extraschedular TDIU was warranted. This is because the standard for referral is identical to the standard for an extraschedular TDIU award. See 38 C.F.R. § 4.16(b) (requiring referral for “cases of veterans *193 who are unemployable by reason of service-connected disabilities,” and noting “the established policy of the Department of Veterans Affairs that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled”); oral argument transcript at 1:25:45 (Secretary stating that “the Director reviews under the same standard” as the RO).[8]
Otherwise stated, the Court’s holding that the law compels a finding that the evidence at the time clearly and unmistakably established a veteran’s unemployability means that the award of extraschedular TDIU at that time was warranted. In such a circumstance, referral is not necessary; indeed, not even the Secretary, let alone the Director, has the authority to reject a holding by this Court. See Ramsey v. Nicholson, 20 Vet.App. 16, 23 (2006) (re-affirming that “ ‘any rulings, interpretations, or conclusions of law contained in [a Court] decision are authoritative and binding ... [and] are to be followed by VA agencies of original jurisdiction, the Board of Veterans’ Appeals, and the Secretary in adjudicating and resolving claims’ ” (quoting Tobler v. Derwinski, 2 Vet.App. 8, 12 (1991))).[9]
I recognize that thorny issues remain— such as whether an RO could find CUE in a prior RO decision that implemented a Director’s decision not to award extrasche-dular TDIU — which flow from the fact that the Director is inserted in the adjudicatory process and yet his determination is not directly subject to appeal. See oral argument transcript at 1:43:10 (Secretary stating that the RO implements the Director’s finding, and that the RO decision is subject to appeal). But, unlike the legal question of whether CUE can ever be demonstrated in an RO decision that denied extraschedu-lar TDIU or referral for extraschedular TDIU consideration, these other thorny issues are not before us at this time.
In sum, because the RO’s decision to refer for extraschedular TDIU consideration, and the Director’s decision to award extraschedular TDIU, are both predicated by regulation on the same factual consideration, I would hold that CUE can be demonstrated in an RO decision that denied extraschedular TDIU or referral for ex-traschedular TDIU consideration. As further noted above, however, I concur with today’s opinion that the Board’s decision that the evidence before the RO was not undebatable that Mr. Evans’s service-connected disabilities rendered him unemployable is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and that the Board’s state *194 ment is supported by adequate reasons or bases, such that the Board decision should be affirmed.

. Contrary to our dissenting colleague's view that the Court is equating competency with employability in violation of regulation, see post at 26 (citing 38 C.F.R. § 4.130 (1987) *190 ("[T]he fact will be borne in mind that a person who has regained competency may still be unemployable.”)), the Court mentions competency as one of the many record factors reflecting the totality of Mr. Evans’s capabilities, which formed the basis for an un-employability determination in 1988, as it does today. See 38 C.F.R. § 4.15 (1988, 2014) (directing that unemployability determinations take into consideration "any impairment of mind or body” sufficient to render a person unemployable).

. As an aside, I note .that on November 6, 2014, my colleagues stamp-denied a motion for leave to file an amicus brief by Edward R. Andrews. I would have granted the motion.

. In contrast to 38 C.F.R. § 4.16(b), where the referral and award of extraschedular TDIU are based on consideration of the same factor, the referral for extraschedular consideration under 38 C.F.R. § 3.321(b)(1) involves consideration of different factors than the award of an extraschedular rating, see Thun v. Peake, 22 Vet.App. 111, 116 (2008) (noting that the RO analyzes whether the rating criteria adequately contemplate the claimant’s disability picture and whether governing norms are present, and — upon referral — the Director determines whether, "to accord justice, the claimant’s disability picture requires the assignment of an extraschedular rating”), aff'd sub nom. Thun v. Shinseki, 572 F.3d 1366 (Fed.Cir.2009) (noting the distinct roles outlined in the Court’s opinion).

. Although Bowling v. Principi, 15 Vet.App. 1, 10 (2001), states that the Court cannot order the Board to award extraschedular TDIU without a referral to the Director, Bowling did not involve a motion for revision based on CUE. Moreover, the Bowling statement was based on a reluctance to "overrule or distinguish” Floyd v. Brown, 9 Vet.App. 88 (1996). Floyd, however, clearly is distinguishable because it involved 38 C.F.R. § 3.321(b), which involves different factors for consideration than § 4.16(b), as noted supra at n. 8.