# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 11-2917

RONALD L. EVANS, APPELLANT,

V.

ROBERT A. McDONALD,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued August 13, 2014)                                    Decided December 2, 2014)

*Sandra E. Booth*, of Columbus, Ohio, was on the brief for the appellant. *Landon E. Overby,* of Providence, Rhode Island, argued before the Court.

*James R. Drysdale*, with whom *Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Richard Mayerick*, Deputy Assistant General Counsel, were on the brief, all of Washington, D.C., for the appellee.[1]

Before KASOLD, *Chief Judge*, and HAGEL, MOORMAN, LANCE, DAVIS, SCHOELEN, PIETSCH, BARTLEY, and GREENBERG, *Judges*.

LANCE, *Judge*, filed the opinion of the Court. KASOLD, *Chief Judge*, filed a concurring opinion. SCHOELEN, *Judge*, filed a dissenting opinion in which GREENBERG, *Judge*, joined. BARTLEY, *Judge*, filed a dissenting opinion in which GREENBERG, *Judge*, joined and SCHOELEN, *Judge*, joined in part.

LANCE, *Judge*: The appellant, Ronald L. Evans, appeals through counsel a June 21, 2011, decision of the Board of Veterans' Appeals (Board) that found that an April 1988 rating decision, which granted the appellant service connection for post-traumatic stress disorder (PTSD) and assigned a 30% disability rating, did not contain clear and unmistakable error (CUE) for "failing to consider and grant entitlement to a total disability rating based on individual unemployability"

---

[1] Following Mr. Campbell's retirement from federal government service, Mary Ann Flynn was appointed Assistant General Counsel. Additionally, Tammy L. Kennedy replaced Will A. Gunn, following his resignation, as Acting General Counsel.

(TDIU). Record (R.) at 3. This appeal is timely, and the Court has jurisdiction over the case pursuant to 38 U.S.C. §§ 7252(a) and 7266. The parties each filed briefs, and the appellant filed a reply brief. Thereafter, a three-judge panel of the Court heard oral argument in the case on January 28, 2014. On July 21, 2014, the case was submitted to the en banc Court pursuant to section VII(b)(2)(A) of the Court's Internal Operating Procedures, and the en banc Court heard oral argument on August 13, 2014. As the Board's determination that the April 1988 rating decision did not contain CUE is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, and because the Board provided an adequate statement of reasons or bases for its decision, the Court will affirm the June 21, 2011, Board decision.

## I. FACTS

The appellant served in the U.S. Marine Corps from November 1973 to October 1975. R. at 1285.

Following service, on July 23, 1987, he filed a VA form 21-526, Veteran's Application for Compensation or Pension, seeking disability compensation benefits for PTSD. R. at 1133-36. In his application, he noted that he had worked as a foreman at "Day Lay Farms" in Raymond, Ohio, for one month when he "was let go since he was entering [the] hospital." R. at 1135. A September 1987 VA medical center (VAMC) discharge summary indicated that he had been admitted to the VAMC on July 27, 1987, for PTSD treatment and concluded

> It is felt that the [appellant] is unemployable at this time in light of his continuing need for intensive out-patient treatment with the possibility of referral back for in-patient treatment should his out-patient therapist deem it appropriate. His employment status will be reassessed on a continuing basis as an out-patient and may be upgraded when felt appropriate.

R. at 1165.

In a November 1987 VA compensation and pension (C&P) examination, Paul Kirch, M.D., found the appellant coherent and logical and noted that his emotional reactions were appropriate. R. at 1146-47. Dr. Kirch also found the appellant competent and that his mental content revealed no delusions, hallucinations, or abnormal thought processes. *Id.* On January 12, 1988, the appellant underwent two VA C&P examinations. R. at 1128-29, 1130-31. In the first, Liberato Basobas,

2

M.D., found the appellant anxious, tense, suspicious, guarded, evasive, and somewhat manipulative. R. at 1128-29. Dr. Basobas also found that the appellant's judgment and insight were fair, he was competent, and he denied hallucinations or delusions. *Id.* Dr. Basobas indicated the appellant's ability to attend group therapy for PTSD. *Id.* In the second January 1988 C&P examination, Souhair Garas, M.D., also stated that the appellant was able to attend group therapy for PTSD. R. at 1130-31.

In an April 1988 rating decision, the Cleveland, Ohio, VA regional office (RO) granted the appellant (1) benefits for PTSD, assigning a 30% disability rating effective July 23, 1987; (2) a temporary 100% disability rating, effective July 27, 1987, the date of his VAMC admission; and (3) a 30% disability rating, effective October 1, 1987, the date following his discharge from the VAMC. R. at 1111-13. Also in the April 1988 rating decision, the RO marked "yes" in box 17, entitled "EMPLOYABLE *(Compensation only)*." R. at 1111. The appellant did not appeal this decision, and it became final.

About 10 years later, in a November 1998 rating decision, the RO granted the appellant a 70% disability rating for PTSD, effective January 23, 1995.[2] R. at 433 (July 2002 rating decision referring to the November 1998 rating decision). On December 4, 1998, he filed a VA form 21-8940, Veteran's Application for Increased Compensation Based on Unemployability. R. at 853-54. The RO granted him entitlement to TDIU, effective December 4, 1998, by a rating decision issued in December 1999. R. at 798-802. Thereafter, the RO increased the appellant's schedular disability rating for PTSD to 100%, effective January 23, 1995, and found CUE in the December 1999 rating decision for failing to grant TDIU effective January 23, 1995. R. at 430-37. Ultimately, in a December 2003 decision, the Board denied an effective date earlier than January 23, 1995, for the appellant's TDIU award. R. at 389-97.

On appeal, this Court issued an order in September 2006 setting aside the Board's December 2003 decision and dismissing the appeal, holding that the appellant's earlier effective date request, based on a failure of the April 1988 RO to adjudicate an informal claim for TDIU, had to be made in the context of a request for revision of the April 1988 rating decision based on CUE. *Evans v.*

_____

[2] The Court notes that the November 1998 rating decision is not in the record of proceedings.

3

*Nicholson*, No. 04-744, 2006 WL 2805051 (Vet. App. Sept. 26, 2006). In accordance with the Court's order, the appellant filed a motion to revise the April 1988 rating decision, arguing that the RO committed CUE in failing to construe his July 23, 1987, PTSD claim to include a request for entitlement to TDIU. R. at 268-71. In August 2009, the RO determined that the appellant's 1987 claim did not include a request for TDIU and alternatively determined that TDIU remained denied because the appellant had not demonstrated CUE in that denial. R. at 160-69. The appellant perfected an appeal to the Board, R. at 26 (Apr. 2010 VA Form 9), 33-54 (Apr. 2010 Statement of the Case), 80-81 (Aug. 2009 Notice of Disagreement).

In the June 2011 decision on appeal, the Board determined that the April 1988 rating decision did not contain CUE. R. at 2-16. In doing so, it determined that the evidence before the RO in April 1988 reasonably raised the issue of entitlement to TDIU and further determined that the April 1988 decision implicitly denied TDIU. R. at 11-13. The Board further found that the appellant had reasonable notice that entitlement to TDIU had been denied, as "a reasonable person would have recognized that a 100% rating and a TDIU were effectively the same benefits," and that the reduction of the 100% rating coupled with a substantial decrease in monthly benefits represented a denial of TDIU. R. at 12. Additionally, the Board found "that the RO implicitly determined that the [appellant] was not unemployable due to his PTSD, because the case was not submitted for extra-schedular consideration by VA's Director, Compensation and Pension Service." R. at 13. Hence the Board rejected the appellant's argument that the April 1988 rating decision was the product of CUE for failing to adjudicate the issue of TDIU. R. at 13.

As to the merits of TDIU, the Board found that a CUE challenge would nonetheless fail because "the evidence of record in April 1988 did not show that it was 'absolutely clear' or 'undebatable' that the [appellant] was unemployable due to his PTSD." R. at 13-14. The Board explained that, while "the evidence of record in April 1988 contained medical evidence indicating that the [appellant] was unemployable, the record also contained other medical evidence from which the RO could have concluded that he was not unemployable," referencing the November 1987 and January 1988 C&P opinions. R. at 14. This appeal followed.

4

## II. THE PARTIES' ARGUMENTS

The appellant first argues that the Board erred by holding that an implicit denial is a complete defense to a CUE request. Appellant's Brief (Br.) at 13-15; Reply Br. at 2-3. The Secretary responds that the Board did not conclude that an implicitly denied claim necessarily bars all CUE challenges. Secretary's Br. at 7-9. Second, the appellant contends that the Board erred when it determined that a motion alleging CUE must "show entitlement to reversal and a grant of benefits as a condition precedent to CUE relief based on an unadjudicated claim theory." Appellant's Br. at 15-23; Reply Br. at 3-13. Specifically, he argues that 38 C.F.R. § 4.16(b) was misapplied and that the Board should have found that the RO clearly and unmistakably should have referred his case to the C&P Director and that such an outcome here would have resulted in a "manifest change in outcome," even though referral itself does not result in a grant of benefits. Appellant's Br. at 18-23. The Secretary responds that a Board finding that a claim was adjudicated and implicitly denied permits a challenge based on CUE, but that the appellant must still provide persuasive reasons as to why the result would have been manifestly different but for the alleged error. Secretary's Br. at 9-13. He further argues that the appellant's assertion that he need not demonstrate that the actual outcome would have been manifestly different, i.e., a resultant grant of benefits, has no support in the Court's CUE jurisprudence. *Id.*

Finally, the appellant argues that, if the Court resolves the above two issues in favor of the Secretary, then the Board's denial of revision is arbitrary, capricious, and an abuse of discretion or otherwise not in accordance with the law as there was no basis in the record to deny TDIU in April 1988. Appellant's Br. at 23-29; Reply Br. at 13-15. The Secretary responds that this argument amounts to a mere disagreement with how the RO weighed the evidence in April 1988, which is legally insufficient to support a finding of CUE. Secretary's Br. at 13-16.

## III. ANALYSIS

### A. Implicit Denial as a Bar to CUE

The Court is unpersuaded by the appellant's argument "that the Board erred as a matter of law by interpreting an implicit denial to constitute a bar to CUE." Appellant's Br. at 13. In the decision on appeal, the Board concluded "that the April 1988 rating decision properly considered and

5

implicitly denied the [appellant]'s [request] for a TDIU. Therefore, the [appellant]'s [motion for] CUE for failing to adjudicate the claim fails as a matter of law." R. at 13. Thus, contrary to the appellant's argument, the Board did not find that an implicit denial constitutes a bar to CUE. *See id.* Rather, the Board simply determined that the appellant's argument that the RO committed CUE *in failing to adjudicate the issue of TDIU* must fail as TDIU was indeed considered and implicitly denied in the April 1988 rating decision.[3] *Id.* The Board proceeded to address whether the assertion of CUE in the denial of TDIU had merit, and it determined that the appellant had not demonstrated CUE in that denial. R. at 14 ("The evidence of record in April 1988 did not show that it was 'absolutely clear' or 'undebatable' that the [appellant] was unemployable due to his PTSD."). Once the Board determined that the appellant's claim was implicitly denied, however, his assertion that the RO committed CUE in failing to adjudicate TDIU failed as a matter of law. *See Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) ("An appellant bears the burden of persuasion on appeals to this Court."), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table).

### B. CUE in the April 1988 Rating Decision

Mr. Evans's next argument is also unpersuasive. Mr. Evans asserts that the Board's determination that the April 1988 rating decision was not the product of CUE was arbitrary, capricious, or otherwise not in accordance with the law.

A CUE motion is a collateral attack on a final RO or Board decision. *Disabled Am. Veterans v. Gober*, 234 F.3d 682, 696-98 (Fed. Cir. 2000). Clear and unmistakable error is established when the following conditions are met: First, either (1) the correct facts in the record were not before the adjudicator, or (2) the statutory or regulatory provisions in existence at the time were incorrectly applied. *Damrel v. Brown*, 6 Vet.App. 242, 245 (1994). Second, the alleged error must be

---

[3] Of course, if the Board finds that VA has not adjudicated a pending claim, the Board must direct VA to adjudicate the claim. *See Richardson v. Nicholson*, 20 Vet.App. 64, 72 (2006) ("If such a reasonably raised claim remains pending, then there is no decision on that claim to revise on the basis of CUE; however, the claim must be adjudicated."). However, the Court emphasizes that, subsequent to the Court's decision in *Richardson*, the Court issued a decision in *Ingram v. Nicholson*, which held that an appeal of an effective date decision is the proper method *to obtain direct review* of an assertion as to when a claim was first raised. 21 Vet.App. 232, 254 (2007); *but see Richardson*, 20 Vet.App. at 72, n.7 (declining to address "[w]hether or not CUE is the exclusive way to raise such a matter."). Nevertheless, "[t]he Secretary's failure to adjudicate a reasonably raised claim can be the basis of the CUE motion as to a final decision of the Secretary where the issue was relevant to a decision actually made." *Ingram*, 21 Vet.App. at 254-55.

6

"undebatable," not merely "a disagreement as to how the facts were weighed or evaluated." *Russell v. Principi*, 3 Vet.App. 310, 313-14 (1992) (en banc); *see also Hillyard v. Shinseki*, 24 Vet.App. 343, 349 (2011). Finally, the commission of the alleged error must have "manifestly changed the outcome" of the decision being attacked on the basis of CUE at the time that decision was rendered. *Russell*, 3 Vet.App. at 313-14; *see Bustos v. West*, 179 F.3d 1378, 1380 (Fed. Cir. 1999) (expressly adopting "manifestly changed the outcome" language in *Russell*); *see also King v. Shinseki*, 26 Vet.App. 433, 442 (2014) ("Whether it is reasonable to conclude that the outcome would have been different is not the standard that must be met for a motion alleging [CUE] to succeed. The governing law requires that the error be 'undebatable' and that the commission of the alleged error must have 'manifestly changed the outcome' of the decision." (citing *Russell*, 3 Vet.App. at 313-14)).

"CUE is a very specific and rare kind of 'error' . . . of fact or law, that when called to the attention of later reviewers compels the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the error." *Fugo v. Brown*, 6 Vet.App. 40, 43 (1993). "[I]f it is not absolutely clear that a different result would have ensued," based upon the facts and law that were understood at the time of the decision, then any error that may have occurred in a final Board or RO decision is not clear and unmistakable. *Id*. at 44. The Court cannot review a CUE motion under the same standard by which it reviews matters on direct appeal. "As a result, there will be times when the Court arrives at a different conclusion when reviewing a motion to reverse or revise a prior, final decision than it would have had the matter been reviewed under the standards applicable on direct appeal." *King*, 26 Vet.App. at 442. The Court's review of the Board's determination on the existence of CUE is limited to whether that conclusion was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" or unsupported by adequate reasons or bases. 38 U.S.C. § 7261(a)(3); *Hillyard*, 24 Vet.App. at 349; *Russell*, 3 Vet.App. at 315.

In finding that the April 1988 RO decision implicitly denied TDIU and that the appellant had reasonable notice of the denial, the Board reasoned that a reasonable person would have recognized that a 100% disability rating and TDIU were effectively the same benefits and that the reduction of the disability rating to 30%, coupled with a substantial decrease in monthly benefits, represented a denial of TDIU. R. at 12; *see Locklear v. Shinseki*, 24 Vet.App. 311, 316 (2011) ("The award of a

7

disability rating less than 100% generally provides notice as to how the Secretary has rated a claimant's condition and serves as a final decision, if unappealed, with regard to entitlement to any higher disability rating associated with the underlying disability, including TDIU." (citing *Ingram*, 21 Vet.App. at 248)); *Ingram*, 21 Vet.App. at 243 (holding that "a reasonably raised claim remains pending until there is either a recognition of the substance of the claim in an RO decision from which a claimant could deduce that the claim was adjudicated or an explicit adjudication of a subsequent 'claim' for the same disability"); *see also Adams v. Shinseki*, 568 F.3d 956, 965 (Fed. Cir. 2009) ("[T]he implicit denial rule is, at bottom, a notice provision."). As noted above, the appellant fails to demonstrate any error with regard to the Board's finding as to implicit denial. *See Hilkert*, 12 Vet.App. at 151.

The gravamen of the appellant's argument on appeal is that the Board erred because it should have found that the RO clearly and unmistakably should have referred his case to the C&P Director on the issue of entitlement to TDIU pursuant to 38 C.F.R. § 4.16(b), and that the referral constitutes a "manifest change in outcome," even though referral itself does not result in a grant of benefits. Appellant's Br. at 15-23. However, this argument puts the cart before the horse. For the reasons stated below, the Court is not persuaded that the Board's determination that the record evidence was not undebatable that the appellant was unemployable due to his PTSD was arbitrary, capricious, an abuse of discretion, or otherwise contrary to the law, or supported by inadequate reasons or bases. Therefore, the Court need not decide today whether referral of a case to the C&P Director for consideration of an extraschedular TDIU pursuant to § 4.16(b) can constitute a "manifestly different outcome" of a prior final decision sufficient to establish CUE in that decision. *See Quirin v. Shinseki*, 22 Vet.App. 390, 396 (2009) (holding that "the Court will not ordinarily consider additional allegations of error that have been rendered moot by the Court's opinion or that would require the Court to issue an advisory opinion").

At the time of the April 1988 rating decision, § 4.16(b) provided that "rating Boards should submit to the [C&P] Director . . . for extraschedular consideration all cases of veterans who *are unemployable* by reason of service connected disabilities . . . " 38 C.F.R. § 4.16(b) (1987) (emphasis added). Here, the Board found that "[t]he evidence of record in April 1988 did not show that it was 'absolutely clear' or 'undebatable' that the [appellant] was unemployable due to his PTSD." R. at 13-

8

14. The Board acknowledged the September 1987 VAMC discharge summary's indication that the appellant was unemployable, but it found that "the record also contains other medical evidence from which the RO could have concluded that he was not unemployable." R. at 14. The Board then cited to the November 1987 and January 1988 C&P opinions, "whose examiners reported clinical findings indicating that the [appellant]'s PTSD was less than totally disabling at that time." *Id.*

Initially, the Court notes that the appellant reported that he had worked as a foreman at "Day Lay Farms" in Raymond, Ohio, for one month when he "was let go since he was entering [the] hospital," in connection with his July 1987 PTSD claim. R. at 1135. Further, although the September 1987 VAMC discharge summary indicates that the appellant was unemployable, the discharge summary also indicates that (1) the appellant may return to pre-hospital activities, (2) his employment status would be reassessed and may be upgraded when felt appropriate, and (3) his unemployability was based partially on "the possibility of referral back for in-patient treatment," which did not occur, based on the record at the time. R. at 1165.

Moreover, other evidence supports the Board's finding that the evidence of record was not *undebatable* that the appellant was unemployable due to his PTSD. Turning to the discussion by the Board, Dr. Kirch, in the November 1987 C&P opinion, found the appellant coherent and logical and noted that his emotional reactions were appropriate. R. at 1146-47. Dr. Kirch also found the appellant competent and that his mental content revealed no delusions, hallucinations, or abnormal thought processes. *Id.* In one of the January 1988 C&P opinions, Dr. Basobas found that the appellant's judgment and insight were fair, he was competent, and he denied hallucinations or delusions. R. at 1128-29. Dr. Basobas noted the appellant's ability to attend group therapy for PTSD. *Id.* In the other January 1988 C&P opinion, Dr. Garas also noted the appellant's ability to attend group therapy for PTSD. R. at 1130-31.

To the extent that our dissenting colleague states that "none of the VA examiners reassessed the veteran's unemployability or 'upgraded' his employment status as directed in the September 1987 VA hospital discharge summary," *post* at 24-25, the Court notes that the absence of the words "unemployability" or "unemployable" does not equate to an absence of *evidence* from which the factfinder can consider, draw inferences, and assign probative value as appropriate. Indeed, it is the prerogative of the factfinder—here, the April 1988 RO—to interpret the evidence and draw

9

reasonable inferences from it. *See e.g.*, *Kahana v. Shinseki*, 24 Vet.App. 428, 435 (2011); *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990). Although our dissenting colleague goes through pains to reweigh the evidence of record, the Court is prohibited from engaging in such an exercise and disagreements with how the evidence was weighed and evaluated at the time of the prior decision cannot constitute CUE. *See Hillyard*, 24 Vet.App. at 349; *Russell*, 3 Vet.App. at 313-14. Overall, the appellant's condition and abilities noted by the November 1987 and January 1988 C&P examiners do not compel a finding that the appellant was unable to secure and follow a substantially gainful occupation. *See Fugo*, 6 Vet.App. at 43.[4]

Although the appellant relies heavily on the fact that the September 1987 VAMC discharge summary contains *medical evidence* indicating that he was unemployable, R. at 1165, that alone does not end the inquiry.[5] At the time of the April 1988 RO decision, and still today, a TDIU determination was to be based on a weighing of all the evidence regarding the appellant's condition. *See* 38 C.F.R. § 3.303 (1988) (requiring "all pertinent medical and lay evidence" to be considered in rating determinations); *see also Geib v. Shinseki*, 733 F.3d 1350, 1354 (Fed. Cir. 2013) ("[A]pplicable regulations place the responsibility for the ultimate TDIU determination on the VA, not a medical examiner"); *Moore v. Nicholson*, 21 Vet.App. 211, 218 (2007) (discussing 38 C.F.R. § 4.2 and stating that "[t]he medical examiner provides a disability evaluation and the rating specialist interprets medical reports in order to match the rating with the disability"), *rev'd on other grounds sub nom. Moore v. Shinseki*, 555 F.3d 1369 (Fed. Cir. 2009); *cf.* 38 C.F.R. § 4.130 (1988)

---

[4] The Court notes that the rating schedule before the RO in April 1988 considered the effects of PTSD and employability explicitly. 38 C.F.R. § 4.132, Diagnostic Code (DC) 9411 (1987) (100% schedular disability rating warranted where, inter alia, claimant is "[d]emonstrably unable to obtain or retain employment"; 30% for "definite industrial impairment"); s*ee Bowyer v. Brown*, 7 Vet.App. 549, 553 (1995) (making clear that the agency's use "of its own medical judgment provided by the medical member of [a] panel was common practice prior to the [Court's decision in] *Colvin*[ *v. Derwinski*, 1 Vet.App. 171 (1991)]").

[5] Indeed, while noting that "[i]t [wa]s felt that the [appellant wa]s unemployable at th[e] time in light of his continuing need for intensive out-patient treatment," the 1987 hospital discharge summary also stated that the appellant "may return to pre-hospital activities," which included employment. R. at 1165; *see* R. at 1135 (Jul. 1987 VA form 21-526, Veteran's Application for Compensation or Pension, noting the appellant had worked as a foreman at "Day Lay Farms" in Raymond, Ohio, for one month when he "was let go since he was entering [the] hospital"). Again, despite our dissenting colleague's mighty efforts to *reweigh* the evidence of record, it is simply not undebatable on the issue of unemployability. *See Russell*, 3 Vet.App. at 313 (holding that a claimant "must assert more than a disagreement as to how the facts were weighed or evaluated"); *see also Cacciola v. Gibson*, 27 Vet.App. 45, 60 (2014) ("Although the Board is required to provide an adequate statement of reasons or bases for its determination whether the . . . decision contained CUE, the Board does not reweigh the evidence.").

(directing that evaluations of the degree of psychiatric disabilities are to be based primarily on "the report and the analysis of the symptomatology and the full consideration of the whole history by the rating agency" and that an examiner's classification of the degree of disability "is not determinative"). The appellant fails to demonstrate that the RO committed CUE by not adopting the view of unemployability indicated solely in the VAMC discharge summary. *See Moore*, 555 F.3d at 1373 ("'[I]t is the responsibility of the rating specialist to . . . reconcil[e] the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability present.'" (quoting 38 C.F.R. § 4.2)); *Hilkert*, 12 Vet.App. at 151.

Finally, the Court notes that, at the time of the April 1988 rating decision, the RO was not required to provide a statement of reasons or bases as to its conclusions. *See Natali v. Principi*, 375 F.3d 1375, 1381 (Fed. Cir. 2004) (holding that statements of reasons or bases in RO decisions were not required prior to "the Veterans' Benefits Amendments of 1989, Pub.L. No. 101–237, 103 Stat. 2062 (1988), which added the statutory provision mandating that decisions denying benefits include a statement of the reasons for the decision"); *see also Eddy v. Brown*, 9 Vet.App. 52, 58 (1996) (holding that "silence in a final RO decision made before February 1990 cannot be taken as showing a failure to consider evidence of record"). Accordingly, to establish CUE based on the failure to consider a particular fact or law, "in a pre-February-1990 RO decision, it must be clear from the face of that decision that a particular fact or law *had not been considered* in the RO's adjudication of the case." *Joyce v. Nicholson*, 19 Vet.App. 36, 46 (2005). There is no indication on the face of the April 1988 rating decision that the RO did not consider the evidence of record or the application of § 4.16(b), and the Court cannot conclude that it failed to do so on the basis of silence alone. *See Natali*, 375 F.3d at 1380 (RO's failure in 1945 to cite to presumption of soundness and aggravation does not mean that those statutes were not correctly applied); *Eddy*, 9 Vet.App. at 58.

In summary, the Court is not persuaded that the Board's determination that the evidence of record was not undebatable that the appellant was unemployable due to his PTSD, was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law, or supported by inadequate reasons or bases. *See* 38 U.S.C. § 7261(a)(3); *Hillyard*, 24 Vet.App. at 349; *Russell*, 3 Vet.App. at 315; *see also Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("The scope of the Court's review under the 'arbitrary and capricious' standard is narrow and a 'court is not

to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choices made.'" (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962))). Hence, as the appellant has not shown "undebatably" that referral was warranted here, the Court need not address the issue of whether referral of a case to the C&P Director for consideration of an extraschedular TDIU pursuant to 38 C.F.R. § 4.16(b) can constitute a "manifestly different outcome" of a prior final decision sufficient to establish CUE in that decision. *See Quirin*, 22 Vet.App. at 396.

## IV. CONCLUSION

Upon consideration of the foregoing, the June 21, 2011, Board decision is AFFIRMED.

KASOLD, *Chief Judge*, concurring: I fully agree with the Court's holding today that the evidence before the 1988 RO did not undebatably establish entitlement to TDIU, or referral to the Director, Compensation and Pension Service, for an evaluation of extraschedular TDIU.[6] I write separately, however, to address two issues.[7]

First, as the author of the 2006 order dismissing Mr. Evans's request for an earlier effective date for TDIU, I wish to highlight the understanding at the time of that order that an assertion that a RO decision failed to construe and adjudicate an implied claim for benefits had to be presented in the context of a request for revision based on CUE. *See Andrews v. Nicholson*, 421 F.3d 1278, 1284 (Fed. Cir. 2005) ("[W]hen the VA violates *Roberson* [*v. Principi*, 251 F.3d 1378 (Fed. Cir. 2001),] by failing to construe the veteran's pleadings to raise a claim, such claim is not considered unadjudicated but the error is instead properly challenged through a CUE motion[.]"); *see also*

---

[6] Contrary to our dissenting colleague's view that the Court is equating competency with employability in violation of regulation, *see post* at 26 (citing 38 C.F.R. § 4.130 (1987) ("[T]he fact will be borne in mind that a person who has regained competency may still be unemployable.")), the Court mentions competency as one of the many record factors reflecting the totality of Mr. Evans's capabilities, which formed the basis for an unemployability determination in 1988, as it does today. *See* 38 C.F.R. § 4.15 (1988, 2014) (directing that unemployability determinations take into consideration "any impairment of mind or body" sufficient to render a person unemployable).

[7] As an aside, I note that on November 6, 2014, my colleagues stamp-denied a motion for leave to file an amicus brief by Edward R. Andrews. I would have granted the motion.

12

*Bingham v. Nicholson*, 421 F.3d 1346, 1349 (Fed. Cir. 2005) ("[A]s we recently held in *Andrews . . .* , the VA's failure to consider all aspects of a claim does not render its decision non-final but instead is properly challenged through a CUE motion." (internal quotation marks omitted)). It was almost a year after the order issued that the Court sanctioned the option of raising such an argument in the context of a direct appeal as to the assigned effective date for benefits. *See ante* at 6 n.3; *compare Richardson v. Nicholson*, 20 Vet.App. 64, 72 n.7 (2006) (declining to address "[w]hether or not CUE is the exclusive way to raise such a matter"), *with Ingram v. Nicholson*, 21 Vet.App. 232, 254-55 (2007) (holding that claimants can appeal effective date decisions to obtain review of assertions that a final decision failed to adjudicate an implied claim).

Had Mr. Evans's CUE motion succeeded in demonstrating that TDIU indeed was raised but overlooked and not adjudicated by the RO in its 1988 decision, today's opinion correctly notes that the proper action to be taken by the Secretary would have been to adjudicate TDIU for the period that it was pending and assign a new effective date if substantiated. *See ante* at 6 n.3; *Richardson*, 20 Vet.App. at 72 ("If such a reasonably raised claim remains pending, then there is no decision on that claim to revise on the basis of CUE; however, the claim must be adjudicated.").

Relatedly, because assertions of CUE require specificity, *Andre v. Principi*, 301 F.3d 1354, 1361 (Fed. Cir. 2002) (CUE motion encompasses "only the clear and unmistakable errors specifically alleged therein"); *Acciola v. Peake*, 22 Vet .App. 320, 328 (2008) (Board need only discuss theories of CUE specifically raised by claimant), had Mr. Evans's CUE motion been limited to an assertion that his entitlement to TDIU had not been adjudicated, that would have been the only issue properly on appeal. *See Jarrell v. Nicholson*, 20 Vet.App. 326, 333 (2006) (en banc) ("[E]ach wholly distinct and different CUE theory underlying a request for revision is a separate matter and, when attacking a prior RO decision, each must be presented to and adjudicated by the RO in the first instance and, if not, the Board [and subsequently the Court] lack[ ] jurisdiction over the merits of the matter."); *compare Andrews*, 421 F.3d at 1282-83 (holding that assertions of CUE by a pro se claimant are to be sympathetically read, but assertions of CUE by counsel are not).

Otherwise stated, an assertion that an issue was *not* adjudicated is distinct from an assertion that an issue was *wrongly* adjudicated; while the former assertion is self-explanatory, the latter requires specificity as to how the claim was wrongly decided, e.g., the correct facts were not before

13

the adjudicator, or the law at the time was misapplied. *See King v. Shinseki*, 26 Vet.App. 433, 439 (2014) (discussing requirements to show CUE); *see also Szemraj v. Principi*, 357 F.3d 1370, 1376 (Fed. Cir. 2004) (specifically noting, in a CUE case where failure to develop evidence was the issue, that failure to sympathetically read the claim had not been alleged). This is why the former has been sanctioned as capable of being properly raised on direct appeal when the effective date is at issue, *see Ingram*, *supra*, while the latter remains exclusively for adjudication pursuant to a request for revision based on CUE, and is not properly before the Court until and unless it has been adjudicated by the agency of original jurisdiction or the Board, as appropriate, *see* 38 U.S.C. §§ 5109A (authorizing CUE motions against decisions of the agency of original jurisdiction) and 7111 (authorizing CUE motions against Board decisions); *Jarrell*, *supra*. Here, as noted in today's opinion, *see ante* at 3-4, 5-6, Mr. Evans raised to the RO – and the RO and Board both adjudicated – his assertion of CUE in failing to adjudicate TDIU, as well as his assertion of CUE in failing to award TDIU.

I write secondly to address the legal issue presented and argued to the Court that is addressed in our colleagues' dissenting statements, but avoided in the Court's opinion; i.e., whether the RO's denial of referral of TDIU for extraschedular consideration can ever constitute CUE. Because this is an important issue fully argued by the parties – with the Secretary asserting that the RO's denial of referral of TDIU on an extraschedular basis can never constitute CUE because a referral is not outcome determinative as to benefits – I believe the Court should have addressed it before deciding whether the Board erred in finding that the 1988 RO decision did not contain CUE.

The Court has not erred in its decision not to address this issue, but neither was such decision compelled. *See Quirin v. Shinseki*, 22 Vet.App. 390, 395 (2009) (citing *Taylor v. McKeithen*, 407 U.S. 191, 194 n.4 (1972), for the proposition that "courts of appeal have wide latitude in deciding how to write an opinion"); *see also Marbury v. Madison,* 5 U.S. 137, 154-73, 180 (1803) (deciding all significant issues presented in finding that mandamus would be a proper remedy, but holding unconstitutional the law granting the Court original jurisdiction to issue mandamus); *Maggitt v. West*, 202 F.3d 1370, 1377 (Fed. Cir. 2001) (this Court "has jurisdiction to hear arguments presented to it in the first instance, provided it otherwise has jurisdiction over the veteran's claim"); Michael Abramowicz and Maxwell Stearns, *Defining Dicta,* 57 STAN. L. REV. 953, 1040 (2005) ("The

14

holding-dicta distinction should not force judges to resolve cases in the narrowest possible manner that is consistent with the case judgment. When an issue is genuinely before a judge, and thus concerns about constraint are at their minimum, the holding-dicta distinction should leave the choice to the deciding jurist to weigh the benefits and costs of resolving the issue in a complete and comprehensive manner.").

At the outset, I cannot agree with the dissenting view that "all that should be needed to establish a manifest change in the outcome of a prior RO decision that failed to refer a case to the Director for consideration of extraschedular TDIU is a showing that, but for the CUE, referral would have occurred, not that there would have been an ultimate award of extraschedular TDIU." *Post* at 29. Such a holding would be an emphatic departure from established caselaw requiring a change in the ultimate outcome to establish CUE. *See Bustos v. West*, 179 F.3d 1378, 1381 (Fed. Cir. 1999) (noting "[t]he requirement that CUE must be outcome-determinative," and stating that 38 C.F.R. § 3.105 does not contemplate findings of CUE "when there is no dispositive impact on the ultimate outcome"); *see also Cook v. Principi*, 318 F.3d 1334, 1346 (Fed. Cir. 2002) (en banc) (re-affirming the "requirement[ ] that a clear and unmistakable error be outcome determinative"); *King v. Shinseki*, 26 Vet.App. 433, 441 (2014) (stating that "a manifest change in the outcome of the adjudication means that, absent the alleged clear and unmistakable error, the benefit sought *would have been granted at the outset*") (emphasis added); *Russell v. Principi*, 3 Vet.App. 310, 320 (1992) (en banc) (CUE requires showing "manifestly that the correction of the error would have changed the outcome").

Our dissenting colleagues note that 38 C.F.R. § 3.105 discusses determinations on marriage, age, service, etc., as potential bases for a CUE motion, and cite this regulation as support for their view that a manifestly changed outcome need not result in the grant of an otherwise denied benefit. However, the Federal Circuit already has noted that these examples are cited for the instances in which they are outcome-determinative, e.g., where a marital-status or veteran-status error is the sole basis of the denial of a benefit, such that the reversal of that error will dispositively impact the outcome. *See Bustos*, 179 F.3d at 1381 ("The requirement that CUE must be outcome-determinative is consistent with the other provisions in § 3.105. This regulation states that prior decisions based

on CUE will be 'reversed or amended' and contemplates that such reversals and amendments will have a dispositive impact on the outcomes of the prior decisions.").

Nevertheless, although for different reasons, I agree with our dissenting colleagues that the RO's denial of extraschedular TDIU or referral of TDIU for extraschedular consideration can constitute CUE. This is because, when we review an assertion that an RO committed CUE in denying extraschedular TDIU or not forwarding that issue to the Director, we must examine whether the Board's determination – that the record evidence at the time of the RO decision was not clear and unmistakable that the veteran's service-connected disabilities rendered him unable to secure and follow substantially gainful occupation (i.e., unemployable) – was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See Joyce v. Nicholson*, 19 Vet.App. 36, 42-43 (2006) (Board decisions on requests for revision based on CUE are reviewed under the "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" standard). If the Board's determination was contrary to law – i.e., if the evidence at the time was clear and unmistakable that the veteran's service-connected disabilities rendered him unemployable – then not only was referral warranted, but the award of extraschedular TDIU was warranted. This is because the standard for referral is identical to the standard for an extraschedular TDIU award. *See* 38 C.F.R. § 4.16(b) (requiring referral for "cases of veterans who are unemployable by reason of service-connected disabilities," and noting "the established policy of the Department of Veterans Affairs that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled"); oral argument transcript at 1:25:45 (Secretary stating that "the Director reviews under the same standard" as the RO).[8]

Otherwise stated, the Court's holding that the law compels a finding that the evidence at the time clearly and unmistakably established a veteran's unemployability means that the award of extraschedular TDIU at that time was warranted. In such a circumstance, referral is not necessary;

---

[8] In contrast to 38 C.F.R. § 4.16(b), where the referral and award of extraschedular TDIU are based on consideration of the same factor, the referral for extraschedular consideration under 38 C.F.R. § 3.321(b)(1) involves consideration of different factors than the award of an extraschedular rating, *see Thun v. Peake*, 22 Vet.App. 111, 116 (2008) (noting that the RO analyzes whether the rating criteria adequately contemplate the claimant's disability picture and whether governing norms are present, and – upon referral – the Director determines whether, "to accord justice, the claimant's disability picture requires the assignment of an extraschedular rating"), *aff'd sub nom. Thun v. Shinseki*, 572 F.3d 1366 (Fed. Cir. 2009) (noting the distinct roles outlined in the Court's opinion).

indeed, not even the Secretary, let alone the Director, has the authority to reject a holding by this Court. *See Ramsey v. Nicholson*, 20 Vet.App. 16, 23 (2006) (re-affirming that "'any rulings, interpretations, or conclusions of law contained in [a Court] decision are authoritative and binding . . . [and] are to be followed by VA agencies of original jurisdiction, the Board of Veterans' Appeals, and the Secretary in adjudicating and resolving claims'" (quoting *Tobler v. Derwinski*, 2 Vet.App. 8, 12 (1991))).[9]

I recognize that thorny issues remain – such as whether an RO could find CUE in a prior RO decision that implemented a Director's decision not to award extraschedular TDIU – which flow from the fact that the Director is inserted in the adjudicatory process and yet his determination is not directly subject to appeal. *See* oral argument transcript at 1:43:10 (Secretary stating that the RO implements the Director's finding, and that the RO decision is subject to appeal). But, unlike the legal question of whether CUE can ever be demonstrated in an RO decision that denied extraschedular TDIU or referral for extraschedular TDIU consideration, these other thorny issues are not before us at this time.

In sum, because the RO's decision to refer for extraschedular TDIU consideration, and the Director's decision to award extraschedular TDIU, are both predicated by regulation on the same factual consideration, I would hold that CUE can be demonstrated in an RO decision that denied extraschedular TDIU or referral for extraschedular TDIU consideration. As further noted above, however, I concur with today's opinion that the Board's decision that the evidence before the RO was not undebatable that Mr. Evans's service-connected disabilities rendered him unemployable is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and that the Board's statement is supported by adequate reasons or bases, such that the Board decision should be affirmed.

---

[9] Although *Bowling v. Principi*, 15 Vet.App. 1, 10 (2001), states that the Court cannot order the Board to award extraschedular TDIU without a referral to the Director, *Bowling* did not involve a motion for revision based on CUE. Moreover, the *Bowling* statement was based on a reluctance to "overrule or distinguish" *Floyd v. Brown*, 9 Vet.App. 88 (1996). *Floyd*, however, clearly is distinguishable because it involved 38 C.F.R. § 3.321(b), which involves different factors for consideration than § 4.16(b), as noted *supra* at n.8.

SCHOELEN, *Judge*, with whom GREENBERG, *Judge*, joins, dissenting: I join Part I of Judge Bartley's dissenting opinion and agree that the evidence demonstrated that Mr. Evans was undebatably unemployable. Although I agree with my colleagues that a decision denying referral for extraschedular TDIU can be challenged on the basis of clear and unmistakable error (CUE), I write separately because I believe that the most logical approach to this issue leads to a finding that establishing CUE in a referral decision *results* in a manifest change in the outcome. Thus, we need not create an exception to our prior decisions – Mr. Evans's case rests comfortably within our CUE jurisprudence.

This case was sent en banc to address whether a regional office (RO) decision denying referral to the Director of Compensation Services (Director) for consideration of extraschedular individual unemployability can be challenged based on CUE. CUE is a high standard; nevertheless, the pro-claimant underpinnings of the veterans benefits system charge this Court with ensuring that veterans who have been denied benefits in error be given the right to have their claims reexamined. *Hodge v. West*, 155 F.3d 1356, 1364 (Fed. Cir. 1998) (noting that the veterans benefits system is "so uniquely proclaimant [that] the importance of systemic fairness and the appearance of fairness carries great weight"); *Bailey v. West*, 160 F.3d 1360, 1370 (Fed. Cir. 1998) (Michel, J. *concurring*) (recognizing that the system for awarding veterans benefits is "imbued with special beneficence" from a sovereign grateful to a "special class of citizens, those who risked harm to serve and defend their country"). For the following reasons, I see no basis for excluding extraschedular total disability ratings based on individual unemployability (TDIU) from reexamination where VA committed CUE.

Any discussion of the scope of CUE must begin with 38 C.F.R. § 3.105. The regulation identifies determinations that can be the subject of a CUE motion including "decisions of service connection, degree of disability, age, marriage, relationship, service, dependency, [and] line of duty." *Id.* If the evidence establishes a clear and unmistakable error, § 3.105(a) directs that the decision be reversed or revised. In *Russell v. Principi*, 3 Vet.App. 310 (1992), the en banc Court examined the language of 38 C.F.R. § 3.105(a) (1991)[10] to determine whether the appellant had demonstrated CUE

---

[10] In 1991, § 3.105(a) provided:

(a) *Error*. Previous determinations on which an action was predicated, including decisions of service connection, degree of disability, age, marriage, relationship, service, dependency, line of duty, and

18

in a decision denying service connection. The Court noted that "[b]y its express terms, 38 C.F.R. § 3.105(a) refers to 'determinations on which an action was predicated.'" 3 Vet.App. 310, 313 (1992). Analyzing this phrase, the unanimous Court concluded that "it necessarily follows that a 'clear and unmistakable error' under § 3.105(a) must be the sort of error which, had it not been made, would have manifestly changed the outcome at the time it was made." *Id.* The error cannot be harmless: it must be the basis for the decision. *Id.* Accordingly, the Court in *Russell* required that the appellant demonstrate that the alleged error directly undermined the RO's basis for denial – a lack of service connection. *Id.* at 320.

In the years since *Russell*, this Court and the Federal Circuit have clarified what is necessary for an error to have manifestly changed the outcome of a prior final decision. In *Mason v. Brown*, 8 Vet.App. 44, 53 (1995), the Court concluded that, for an error in a prior RO decision denying service connection for a nervous condition to constitute CUE, correction of that error must result in a grant of service connection for that condition. In *Cook v. Principi*, the Federal Circuit identified two criteria for CUE: (1) "the alleged error must be outcome determinative" and (2) "the error must have been based upon the evidence of record at the time of the original decision." 318 F.3d 1334, 1344 (Fed. Cir. 2002). The court rejected the argument that a breach of the duty to assist could form the basis for a CUE claim because such an argument led only to the conclusion that the record was incomplete, not that the decision was incorrect. *Id.* at 1346. *Cook* reenforced *Russell*'s outcome determinative standard, requiring a showing that the adjudicator undebatably made an error at the heart of the decision.

In the present case, Mr. Evans established that he was undebatably unemployable. Therefore, I would hold that Mr. Evans was entitled to revision of the decision denying referral because he has demonstrated that the RO committed an outcome determinative error. *Russell* classifies an outcome determinative error as one forming the foundation of the decision. *See Russell*, 3 Vet.App. at 313. Section 4.16(b) provides that "it is the established policy of [VA] that all veterans who are unable

other issues, will be accepted as correct in the absence of clear and unmistakable error. . . .

In December 1991, VA changed the first sentence of § 3.105(a) to remove the language "determinations on which an action was predicated" and replacing it with "determinations that are final and binding." *See* 56 FR 65,845-6 (Dec. 19, 1991). However, in *Bustos v. West*, 179 F.3d 1378 (Fed. Cir. 1999), the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) reaffirmed *Russell*'s interpretation of § 3.105(a) based on the amended regulation.

to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled." Therefore, a determination on unemployability is at the heart of a decision whether to refer a claim to the Director. *See* 38 C.F.R. § 4.16(b) (1988); *see also Thun v. Shinseki*, 572 F.3d 1366, 1370 (Fed. Cir. 2009) (determining that the plain language of the regulation indicates that "a finding of unemployability is a condition precedent to a referral by the regional office"). Mr. Evans showed that the evidence in 1988 undebatably established his unemployability, and thus the rating board erred in concluding that he was not entitled to referral for extraschedular consideration. In doing so, Mr. Evans has demonstrated an outcome-determinative error.

Any suggestion that holding that Mr. Evans has demonstrated an outcome-determinative error would resurrect the grave procedural error is unfounded. As noted in *Cook*, a grave procedural error leads to the conclusion that the record was incomplete and implicates evidence not in the record at the time of the decision. *Cook*, 318 F.3d at 1346. Mr. Evans does not contend that the RO violated its duties to provide him notice or develop his claim. The record is complete, and Mr. Evans asks the Court to find that the RO decision denying him extraschedular TDIU was incorrect. Holding that the RO erred in not referring Mr. Evans to the Director does not lead to a conclusion that the record was incomplete or implicate outside evidence. Thus, this case is distinct from the grave procedural error, and I would find Mr. Evans is entitled to revision on the basis of CUE in the 1988 RO decision denying him extraschedular TDIU.

Moreover, the unique adjudicatory scheme of extraschedular TDIU requiring referral to the Director should not be a barrier to a grant of CUE. Some may argue that referral cannot be the basis for CUE because additional adjudication is required to finally resolve the claim. Proponents of this approach may cling to the idea that once a decision becomes final, the door should only be opened if it can immediately be closed again. They fear that anything else opens the floodgates to repetitive and belated readjudication of veterans benefits claims. These concerns are unfounded. Of course, finality is important, and repetitive readjudication should be avoided. Nevertheless, the additional adjudication that would follow a revision of a decision on referral – like the additional adjudication following decisions on veteran status, marriage, service connection, and dependency – is not redundant. Rather, consistent with the structure of the VA system where "even the different elements of a single claim might necessarily be litigated separately," if revision is granted on the

basis of CUE, the downstream issues from that decision will be litigated for the first time. *Elkins v. Gober*, 229 F.3d 1369, 1375 (Fed. Cir. 2000) (recognizing that "the unique statutory process of adjudication through which veterans seek benefits may necessarily require that the different issues or claims of a case be resolved at different times, both by the agency of original jurisdiction and on appeal").[11]

It is axiomatic that an appellant can demonstrate CUE by showing that but for the error, he would have been awarded service connection. *See Russell*, *Mason*, and *Cook*, all *supra.* Revising a decision to award service connection does not end the appellant's claim. Instead, the decision denying service connection is reversed and the matter is remanded for further adjudication of disability rating and effective date. Similarly, because veteran status and marriage can be dispositive in disability compensation and death and indemnity compensation claims, VA may deny the claim before any meaningful evidentiary development takes place. If a claimant later challenges a denial of disability compensation on the basis of veteran status, the sparse and undeveloped record may only be sufficient to establish that he or she was a veteran, leaving downstream issues of service connection, disability rating, and effective date for subsequent proceedings. A widow may be in a similar position if she is denied death and indemnity compensation based on an erroneous determination on marriage. To establish CUE, should she be required to show not only that she was married to the deceased veteran but also that he died of a service-connected illness? It would be absurd to cut these blameless claimants off at their knees in the name of protecting finality. Because both the structure of the veterans benefits system and the Court's consistent practice allow for downstream adjudication of previously unaddressed issues, any argument that referral cannot be the basis for CUE because it requires additional adjudication must fail.

Demonstrating an outcome-determinative error in the rating board's decision denying referral does not require an exception; it fits squarely within the rule. Accordingly, because I would find that Mr. Evans established CUE in the 1988 rating decision, I respectfully dissent.

---

[11] In *King v. Shinseki*, the Court stated that "a manifest change in the outcome of the adjudication means that, absent the alleged clear and unmistakable error, the benefit sought would have been granted at the outset." 26 Vet.App. 433, 442 (2014). To the extent this statement could be construed to equate manifest change in the outcome with actual payment, such an interpretation would run afoul of *Elkins*, which contemplates separate, later adjudications of downstream elements.

BARTLEY, *Judge*, with whom GREENBERG, *Judge*, joins in full, and SCHOELEN, *Judge*, joins as to part I, dissenting: We cannot endorse the majority's affirmance of the June 2011 Board decision finding no CUE in the April 1988 RO implicit decision that Mr. Evans was not entitled to referral under 38 C.F.R. § 4.16(b) because no reasonable factfinder could have reviewed the evidence of record in April 1988 and reached that conclusion. All of the evidence pertinent to unemployability unequivocally indicated that he was unable to secure and follow a substantially gainful occupation by reason of service-connected PTSD. Thus, unlike the majority, we would conclude that the Board's finding that the RO in April 1988 did not undebatably err in failing to refer Mr. Evans's case for consideration of extraschedular TDIU was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. And, unlike the majority, we would reach the question of exceptional importance that originally prompted en banc review in this case: Whether such referral can constitute a manifest change in the outcome of a prior final decision sufficient to establish CUE? Therefore, we must respectfully dissent from the majority's decision.

## I.  UNDEBATABLE ERROR

The Board found that the RO had not committed CUE in failing to refer Mr. Evans's case to the Director of VA's Compensation and Pension Service[12] for consideration of extraschedular TDIU because the "evidence of record in April 1988 did not show that it was 'absolutely clear' or 'undebatable' that the [v]eteran was unemployable due to his PTSD."  R. at 14 (quoting *Fugo v. Brown*, 6 Vet.App. 40 43-44 (1993)).  The Board explained that, although the record before the RO "contained medical evidence indicating that the [v]eteran was unemployable, the record also contained other medical evidence from which the RO could have concluded that he was not unemployable," namely, the VA examination reports from Drs. Kirch, Basobas, and Garas.  *Id*. According to the Board, those reports included "clinical findings indicating that the [v]eteran's PTSD was *less than totally disabling* at that time," from which the RO could have reasonably deduced that he was not unemployable.  *Id*. (emphasis added).  The majority sanctions that approach, concluding

_____

[12] The Compensation and Pension Service was renamed the Compensation Service in January 2014.  *See* VA Compensation Service and Pension and Fiduciary Service Nomenclature Changes, 79 Fed.Reg. 2,099, 2,099 (Jan. 13, 2014).  For the sake of clarity, we will hereinafter refer to the Director of VA's Compensation and Pension Service simply as the "Director."

22

that the Board's reliance on those reports to support its denial of the veteran's CUE motion was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See ante* at 11. But, contrary to the majority's analysis, the VA examination reports cited by the Board cannot bear even the minimal weight that the Board placed on them.

One of the requirements for establishing CUE in a prior final decision is a showing that the RO or the Board committed an "undebatable" error in making that decision. *Russell v. Principi*, 3 Vet.App. 310, 313-14 (1992) (en banc). This standard is met by demonstrating that "no reasonable factfinder" could have reached the same conclusion that the RO or the Board reached in that decision based on the evidence then of record.[13] *Joyce v. Nicholson*, 19 Vet.App. 36, 48 (2005); *see Russell*, 3 Vet.App. at 313-14 ("The words 'clear and unmistakable error' are self-defining. They are errors that are undebatable, so that it can be said that reasonable minds could only conclude that the original decision was fatally flawed at the time it was made."). Put another way, where all the evidence before the RO or the Board at the time of the disputed decision militates against the conclusion reached therein, then an "undebatable" error has occurred. *See Bouton v. Peake*, 23 Vet.App. 70, 73 (2008); *Crippen v. Brown*, 9 Vet.App. 412, 422 (1996). That is precisely the situation in this case.

At the time of the April 1988 RO's implicit decision not to refer the case, all of the pertinent evidence of record showed that Mr. Evans was no longer able to secure and follow a substantially gainful occupation by reason of service-connected PTSD.[14] That evidence indicated that Mr. Evans attempted to work as a farm foreman in May and June 1987 but had to quit that job "due to stress and panic attacks" (R. at 1185) that necessitated inpatient psychiatric care (R. at 1135). On July 23, 1987, he filed a claim for VA benefits for PTSD, to include entitlement to TDIU. R. at 1132-36.

---

[13] Contrary to the majority's assertion (*see ante* at 11), it is not necessary to show that the RO did not consider a particular fact or law to establish CUE in an RO decision before February 1990 because, in *Russell*, the en banc Court recognized that "an erroneous factfinding" could form the basis for a finding of CUE in such a decision. 3 Vet. App. at 319.

[14] The majority accuses us of impermissibly reweighing the evidence before the RO (*see ante* at 10), but our discussion of the evidence does not involve any weighing at all. As in *Bouton*, we are delineating the evidence before the RO to show that no evidence whatsoever supported the RO's implicit finding that Mr. Evans was not unemployable and that the Board's finding that that decision did not contain CUE was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See* 23 Vet.App. at 72-73 (describing the evidence before the RO to show that "there was no evidence before the RO that could have supported a denial of the service-connection claim" and reversing the Board decision finding no CUE in that RO decision). No weighing of the evidence is necessary where, as here, "there was no basis in the record" for the RO's decision. *Id*. at 73.

Four days later, he was admitted to a VA hospital with complaints of anxiety, panic attacks, violent nightmares, depression, paranoia, and a history of physical aggression. R. at 1162. Notably, upon admission he denied hallucinations, delusions, suicidal ideation, and aggressive thoughts and was found to be alert, fully oriented, and cooperative, with good speech, appropriate affect and mood, and fair memory, concentration, insight, and judgment. R. at 1164. After nearly two months of intensive inpatient therapy, Mr. Evans was still struggling with anxiety, panic attacks, sleep disturbances, aggressiveness, and violent behavior. *Id*. Yet, he requested to be discharged from the hospital and was granted that release against doctors' orders. R. at 1164-65. The discharge summary stated:

> It is felt that [Mr. Evans] is unemployable at this time in light of his continuing need for intensive out-patient treatment with the possibility of referral back for inpatient treatment should his out-patient therapist deem it appropriate. His employment status will be reassessed on a continuing basis as an out-patient and may be upgraded when felt appropriate.

R. at 1165. Along with the determination that he was unemployable, he was "considered competent to manage his own assets and income" and was cleared to "return to pre-hospital activities." *Id*.

The evidence of record before the RO in April 1988 also included three VA outpatient psychiatric examination reports, from VA Drs. Kirch, Basobas, and Garas, cited by the Board and the majority. The November 1987 VA report from Dr. Kirch and the January 1988 VA reports from Drs. Basobas and Garas contain findings nearly identical to those recorded in the September 1987 VA hospital discharge summary wherein Mr. Evans was found unemployable. *See* R. at 1146-47 (Dr. Kirch's report reflecting panic attacks, anxiety, sleep impairment and disturbances, asocial and aggressive behavior, depression, and constant fear of death), 1128-29 (Dr. Basobas's report reflecting panic attacks, anxiety, sleep impairment and disturbances, aggressive behavior, depression, nervousness, and constant fear of death), 1130-31 (Dr. Garas's report reflecting panic attacks, anxiety, sleep impairment and disturbances, aggressive behavior, depression, anger, and constant fear of death). Although each of the VA examiners commented that Mr. Evans was not currently working because of PTSD symptoms (R. at 1128, 1131, 1146), none of the VA examiners opined on his unemployability. Critically, none of the VA examiners reassessed the veteran's

unemployability or "upgraded" his employment status as directed in the September 1987 VA hospital discharge summary. R. at 1165.

The foregoing is a complete list of the evidence before the RO in April 1988 that postdated Mr. Evans's application and predated its decision. That evidence unequivocally showed that the veteran attempted to work in May and June 1987 but could not maintain that employment due to PTSD (R. at 1135, 1185); he sought VA inpatient treatment for that condition in July 1987 and, upon discharge in September 1987, was deemed indefinitely unemployable due to PTSD, subject to periodic reevaluation on an outpatient basis (R. at 1162-65); and the three VA examiners who subsequently provided outpatient psychiatric treatment did not conclude that his PTSD had improved to the point that he was employable (R. at 1128-31, 1146-47).

Given this evidence, no reasonable factfinder could have concluded–as the RO implicitly did in April 1988–that Mr. Evans's case was not due referral to the Director for extraschedular TDIU consideration. Thus, contrary to the majority's conclusion (*see ante* at 11), the Board's finding that the RO did not commit CUE in April 1988 in failing to refer the case was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See Russell*, 3 Vet.App. at 315 (setting forth the Court's standard of review for Board decisions addressing CUE).

None of the evidence cited by the Board or discussed by the majority compels a different conclusion. As the Board noted in its decision, November 1987 and January 1988 VA examiners did not comment on Mr. Evans's unemployability (R. at 10), and, as discussed above, those examiners did not indicate that the veteran's PTSD had improved since a VA psychiatrist's September 1987 assessment that he was unemployable (R. at 1165).[15] At most, the November 1987 and January 1988 VA examiners addressed Mr. Evans's employment history, but their statements on that topic unambiguously indicate that he was unable to maintain a job due to PTSD. *See* R. at 1128 (Dr. Basobas: "After [the veteran's] discharge from the service, he had several jobs but was not

---

[15] The majority's reading of the September 1987 hospital discharge summary is untenable. Although the hospital discharge summary indicated that Mr. Evans "may return to pre-hospital activities" (R. at 1165), that statement cannot reasonably be construed as evidence that he was employable. *See ante* at 9. The sentence that immediately follows that statement clearly indicated that "the patient is unemployable at this time in light of his continuing need for intensive out-patient treatment with the possibility of referral back for inpatient treatment." R. at 1165. Given this explicit finding that Mr. Evans was unemployable, the majority's assertion that the hospital discharge summary's statement that the veteran may return to pre-hospital activities "included employment" (*ante* at 10 n.5) is patently incorrect.

able to handle them for long periods of time because of anxiety, panic attacks, and his behavior."), 1131 (Dr. Garas: "[The veteran's] last permanent job was in 1983. He worked for a month or two in 1987 but had to quit because of stress."), 1146 (Dr. Kirch: "Following service, [the veteran] did warehouse work in Seattle for two and a half years . . . and then has worked in construction and odd jobs all over the United States for brief periods. . . . He has been married on two occasions, both marriages broke up because of his condition and his inability to work."). Therefore, the only evidence before the RO in April 1988 unambiguously indicated that the veteran was unemployable by reason of service-connected PTSD and, on that record, no reasonable factfinder could have concluded that Mr. Evans was not entitled to referral to the Director for consideration of extraschedular TDIU. *See Joyce*, 19 Vet.App. at 48.

Nevertheless, the majority attempts to salvage the Board decision by noting that the version of 38 C.F.R. § 4.132 in effect in April 1988 under which Mr. Evans was evaluated "considered the effects of PTSD and employability explicitly." *Ante* at 10 n.4. However, the RO's assignment of a less than total schedular evaluation under § 4.132 does not preclude the possibility that the veteran was unemployable and entitled to TDIU. *See* 38 C.F.R. § 4.16(a) (1987) (authorizing TDIU "where the schedular rating is less than total" and the veteran is "unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities"); *see also Guerra*, 642 F.3d at 1047-48; *Vettese*, 7 Vet.App. at 34-35. The majority also states that the RO in 1988 could have equated competency with employability (*see ante* at 9), but the regulation concerning the evaluation of psychiatric disabilities in effect at the time of the April 1988 RO decision explicitly prohibited such a finding. *See* 38 C.F.R. § 4.130 (1987) ("[T]he fact will be borne in mind that a person who has regained competency may still be unemployable.").

The Secretary argues that there was support in the record for the RO's implicit finding that Mr. Evans's PTSD did not make him unemployable because it contained a September 1986 pre-employment physical examination finding the veteran "[a]cceptable for any kind of work for which he is qualified." R. at 1191; *see* Secretary's Br. at 14-15.

This evidence shows Mr. Evans employable in September 1986, 10 months prior to his July 1987 application for benefits and one year prior to the September 1987 finding that he was unemployable. As outlined above, the evidence of record that postdates the September 1986

physical examination report indicates that, as of June 1987, he was unable to continue working as a farm foreman due to PTSD (R. at 1135, 1185); in July 1987, he submitted his application for VA benefits for PTSD (R. at 1133-36) and was hospitalized for two months, receiving inpatient psychiatric treatment (R. at 1162-65); and, in September 1987, he was deemed unemployable due to PTSD (R. at 1165). There is no other evidence of record that postdates the September 1986 examination report but predates the April 1988 RO decision that is pertinent to the veteran's entitlement to referral to the Director.

Therefore, even if the Secretary is correct that the RO could have considered the September 1986 physical examination report in determining entitlement to referral, the uncontroverted evidence before the RO in April 1988 showed that, after September 1986, Mr. Evans's PTSD worsened to the point that it rendered him unemployable at least through the date of the RO decision, and therefore entitled to referral. The September 1986 physical examination report–which was performed during a time when Mr. Evans does not assert that he was unemployable (*see* R. at 1185), before his mental disorder worsened (R. at 1162-65, 1185), and before he even filed his claim for service connection for PTSD including entitlement to TDIU (R. at 1133-36)–does not reflect whether he was unemployable due to PTSD when he filed his claim or during the pendency of that claim.

In sum, the only evidence of record in April 1988 pertinent to Mr. Evans's entitlement to referral under § 4.16(b) at the time he filed his claim for VA benefits unequivocally established that he was unable to secure and follow a substantially gainful occupation by reason of service-connected PTSD, and therefore entitled to referral. Despite the assertions of the Board, the Secretary, and the majority, there is no evidentiary basis upon which a reasonable factfinder could have reached a contrary conclusion. The record thus speaks for itself and compels the conclusion that the RO undebatably erred in failing to refer Mr. Evans's case to the Director for consideration of extraschedular TDIU. Therefore, we would find that the Board's decision that the April 1988 RO decision did not contain CUE because "[t]he evidence of record in April 1988 did not show that it was 'absolutely clear' or 'undebatable' that the [v]eteran was unemployable due to his PTSD" was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See Russell*, 3 Vet.App. at 315.

## II. MANIFEST CHANGE IN THE OUTCOME

Because the Board and the majority both concluded that the evidence before the RO in April 1988 did not undebatably establish that the RO had erred in failing to refer Mr. Evans's case for consideration of extraschedular TDIU, they did not address whether such referral could constitute a manifest change in the outcome of the RO decision sufficient to establish CUE. *See* R. at 14; *ante* at 12. However, given our conclusion in part I above, we will now address that issue.

In *Russell*, the Court held that CUE is "the sort of error which, had it not been made, would have manifestly changed the outcome at the time it was made." 3 Vet.App. at 313. The Court explained that, "[e]rrors that would not have changed the outcome are harmless" because, "by definition, such errors do not give rise to the need for revising the previous decision." *Id.*; *see Bustos v. West*, 179 F.3d 1378, 1381 (Fed. Cir. 1999) (holding that, "to prove the existence of CUE . . . , the [movant] must show that an outcome-determinative error occurred, that is, an error that would manifestly change the outcome of a prior decision," and that CUE involves a "*dispositive* impact on the *ultimate* outcome" (emphasis added)); *Fugo*, 6 Vet.App. at 43-44 ("[E]ven where the premise of error is accepted, if it is not absolutely clear that a different result would have ensued, the error complained of cannot be, ipso facto, clear and unmistakable.").

In the years since *Russell*, the Court has clarified what is necessary for an error to have manifestly changed the outcome of a prior final decision. In *Mason v. Brown*, 8 Vet.App. 44, 53 (1995), the Court concluded that, for an error in a prior RO decision denying service connection for a nervous condition to constitute CUE, correction of that error must result in a grant of service connection for that condition. The next year, in *Crippen v. Brown*, 9 Vet.App. 412, 422 (1996), the Court expanded on this formulation of the requirement, holding that only "a change in the merits outcome" of the decision being collaterally attacked would support a finding of CUE. The Court explained that, "[r]equiring a change in the merits outcome preserves the finality of the VA adjudication process except where substantive rights would be adversely affected if an undebatable adjudication error were not corrected." *Id.* The Court applied the change-in-the-merits-outcome standard to the facts of that case and held that, to succeed on a CUE motion attacking a prior decision that had denied reopening of a claim, it was necessary for the movant to show not only that,

but for the error, he or she would have been entitled to reopening but also that the underlying claim for benefits would have been granted. *Id*. at 422-23.

Since *Crippen*, the Court has adhered to the change-in-the-merits-outcome standard. *See*, *e.g.*, *Joyce*, 19 Vet.App. at 53 (explaining that, to establish CUE in that case, the movant had to show that "the outcome would have been manifestly different, that is, that service connection by aggravation would undebatably have been awarded in 1955 had the RO not erred regarding the presumption of aggravation"); *Lane v. Principi*, 16 Vet.App. 78, 82-83 (2002) (rejecting the appellant's argument that "a successful CUE challenge should demonstrate *either* reversible error *or* prejudicial error" because requiring only a "'significant revision of the challenged decision'" that does not result in a change in the merits of the underlying decision would "not manifestly change the decision's outcome"); *Rivers v. Gober*, 10 Vet.App. 469, 473 (1997) (explaining that, to establish CUE in that case, the movant had to show that "the result of the claim on the merits would have been manifestly different (i.e.[,] the RO would have considered and awarded service connection)"); *see also Cook v. Principi*, 318 F.3d 1334, 1344-45 (Fed. Cir. 2002) (en banc) (holding that a breach of the duty to assist cannot constitute CUE because an error in development does not compel reversal and is therefore not outcome determinative).

However, we are persuaded that the unique adjudicatory scheme for extraschedular TDIU sets Mr. Evans's situation apart from those CUE cases and compels a modification of the change-in-the-merits-outcome standard in this instance. Because an RO adjudicator by regulation is unable to initially reach the merits of extraschedular TDIU, all that should be needed to establish a manifest change in the outcome of a prior RO decision that failed to refer a case to the Director for consideration of extraschedular TDIU is a showing that, but for the CUE, referral would have occurred, not that there would have been an ultimate award of extraschedular TDIU. *Russell* and its progeny are distinguishable because they addressed situations where the adjudicator at the time the CUE was made would have had the ultimate authority to initially make a merits determination.

This is true even for the CUE challenge in *Crippen*, which required the additional step of reopening before the adjudicator could proceed to the merits of the underlying claim. 9 Vet.App. at 423. The critical fact that distinguishes *Crippen* from the instant appeal is that the adjudicator in *Crippen* possessed the authority to make a merits determination at the time the decision being collaterally attacked was issued, that is, he or she had authority to both reopen and grant the

underlying claim for benefits. *See id.* at 421 ("[I]f an RO decision, assailed as CUE, had undebatably erred in denying the reopening of a previously and finally disallowed claim, the Board would have to decide whether, had the error not been made, the outcome after reopening–that is, on the merits–would have 'manifestly' been changed." (citing *Mason*, 8 Vet.App. at 52)).

That is simply not the case here: Although the RO had the authority to refer the case to the Director in April 1988 for consideration of extraschedular TDIU, it lacked the authority to reach the merits of extraschedular TDIU and award that benefit in the first instance. *See* 38 C.F.R. § 4.16(b) (1987) ("[R]ating boards should submit to the Director, Compensation and Pension Service[,] for extra-schedular consideration all cases of veterans who are unemployable by reason of service-connected disabilities, but who fail to meet the percentage standards set forth in paragraph (a) of this section."); *see also Bowling v. Principi*, 15 Vet.App. 1, 10 (2001) (holding that § 4.16(b) vests authority to award extraschedular TDIU in the first instance solely with the Director); VA ADJUDICATION PROCEDURES MANUAL REWRITE (M21-1MR), pt. III, subpt. iv, ch. 6, § B.5.b. ("Only the Director . . . may approve extra-schedular evaluations in compensation cases submitted under 38 C.F.R. [§] 3.321(b)(1) and 38 C.F.R. [§] 4.16(b).").

Therefore, applying the unique adjudicatory scheme created by § 4.16(b) to this case provides distinguishing circumstances from our prior precedent requiring that a manifest change in the outcome necessarily result in a grant of the underlying benefit sought. This is because under § 4.16(b), *referral, not a merits determination,* was the greatest relief that the RO had the authority to provide Mr. Evans in April 1988. Requiring Mr. Evans to prove entitlement to referral only and not success on the merits provides precisely what *Russell* and its progeny require to demonstrate a manifest change in the outcome: a grant of the greatest relief the RO could offer at that time with respect to the extraschedular TDIU benefit.

Because this analysis is in a CUE context, our conclusion that Mr. Evans was undebatably entitled to referral would appear to leave the Director, if remand were to occur, little flexibility in his or her consideration of extraschedular TDIU. However, although the Secretary stated that the standard for referral is the same as for an extraschedular TDIU award, and the language of § 4.16 supports that statement, we are not convinced at this time that referral to the Director would be unnecessary were the majority to find that the Board decision was arbitrary and capricious in finding no CUE in the April 1988 RO implicit decision not to refer. The only helpful information on the role

30

of the Director in extraschedular TDIU consideration was gleaned at oral argument, where the Secretary briefly explained that the purpose of having the Director undertake extraschedular TDIU consideration was to review the RO's front-line initial determination of unemployability to provide consistency, correctness, and accuracy of those decisions; to provide expertise; and to exercise judgment and experience. Oral Argument Transcript at 1:26:10, 1:26:58. Given this specific information, and considering the regulatory process required by § 4.16(b), we are reluctant to conclude at this time that there can be no value added by Director consideration; at the very least, so concluding appears premature.

The posture of Mr. Evans's case in this Court also weighs against deciding that issue; we are reviewing a Board decision that found no CUE in the April 1988 RO implicit decision as to *referral*, a decision that the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) termed a "threshold inquiry" and a "condition precedent" to referral to the Director. *Thun v. Shinseki*, 572 F.3d 1366, 1370 (Fed. Cir. 2009). Questions as to whether Director action is necessary and the Director's role and obligations if Mr. Evans's case were properly referred are not before us.[16]

Our approach as to manifest change in outcome is consistent with Federal Circuit decisions that have identified CUE on the part of the RO even where it was unclear, without further RO or Board action, whether the veteran ultimately would be successful on the underlying merits of the claim. These decisions may be viewed as limited exceptions to the requirement that there must be a manifest change in outcome on the merits. For example, in *Roberson v. Principi*, 251 F.3d 1378, 1384-85 (Fed. Cir. 2001), the Federal Circuit held that the RO's failure to sympathetically read the filings of a pro se veteran to include a request for TDIU could constitute CUE and remanded for "a determination of [the veteran's] eligibility for TDIU." In *Moody v. Principi*, 360 F.3d 1306, 1310 (Fed. Cir. 2004), the Federal Circuit, in the context of a CUE motion, remanded for a "factual" determination as to "whether [the veteran] made an informal claim for secondary service connection."

These decisions support our view that particularly here, where there is a singular adjudicatory scheme that stands apart from the norm and the RO is initially unable to reach the merits and grant

---

[16] We note, however, that the insertion of the Director in the extraschedular TDIU adjudicatory scheme may raise concerns similar to those addressed in *Military Order of Purple Heart v. Sec'y of Veterans Affairs*, 580 F.3d 1293 (Fed. Cir. 2009).

entitlement to extraschedular TDIU, it is necessary to construe a referral to the Director for consideration of extraschedular TDIU as a manifest change in the outcome of the prior RO decision. To adopt the *Crippen* manifestly-different-outcome-on-the-merits definition here could work to insulate a denial of referral for extraschedular TDIU from a CUE challenge. The Secretary has offered, and the Court can discern, no reason for singularly excluding the issue of referral for extraschedular TDIU from the rare but important CUE exception to the rule of finality.[17]

We believe that this clarification of what may constitute a manifest change in outcome as it pertains to CUE in extraschedular TDIU cases strikes the proper balance between the importance of preserving the finality of prior decisions, *see Cook*, 318 F.3d at 1339 ("The purpose of the rule of finality is to preclude repetitive and belated readjudication of veterans' benefit claims."), and the protection of a veteran's substantive rights in pursuing all the benefits to which he or she is legally entitled, *see Crippen,* 9 Vet.App. at 422 ("Requiring a change in the merits outcome preserves the finality of the VA adjudication process except where substantive rights would be adversely affected if an undebatable adjudication error were not corrected."). When these two principles conflict, the pro-claimant nature of the veterans benefit system, as well as our utmost respect and gratitude for the tremendous sacrifices made by veterans and their families, must always be resolved in the veterans' favor. *See Henderson ex rel. Henderson v. Shinseki*, 131 S.Ct. 1197, 1205 (2011) ("The solicitude of Congress for veterans is of long standing. And that solicitude is plainly reflected in the [VJRA], as well as in subsequent laws that place a thumb on the scale in the veteran's favor in the course of administrative and judicial review of VA decisions." (internal citations and quotation marks omitted)).

---

[17] We join our dissenting colleague, Judge Schoelen, in noting that 38 C.F.R. § 3.105(a), the regulation governing CUE challenges to RO decisions, contains broad, nonlimiting language as to the types of issues decided by the RO that may later be subject to reversal or revision on the basis of CUE–such as age, marriage, relationship, dependency, and line of duty–and not all of those issues necessarily impact a claimant's ultimate entitlement to benefits. *See* 38 C.F.R. § 3.105(a) (2014); *ante* at 18. The basis of our dissent, however, is the unique adjudicatory scheme applicable to extraschedular TDIU, not the language of § 3.105(a). Although we find Judge Schoelen's view enticing, neither party briefed or fully argued whether a change in the interpretation of the manifest-change-in-outcome requirement for CUE is due, and we do not address that issue.

### III. CONCLUSION

In this case, proper application of the version of § 4.16(b) extant in April 1988 to the evidence of record at that time shows undebatably that Mr. Evans was entitled to referral to the Director due to his inability to secure and follow a substantially gainful occupation by reason of service-connected PTSD.  The determination that referral was required is a manifest change in the outcome because the RO lacked the authority to reach the merits of extraschedular TDIU–referral was the greatest relief that the RO could provide. The failure to refer thus constitutes CUE and the June 2011 Board decision finding to the contrary was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  Accordingly, we must respectfully dissent from the majority's affirmance of the Board decision.